WILLOUGHBY WESTON, as Trustee, etc., of WILLIAM G. BREESE, Deceased, Respondent, *v.* CORNELIA P. GOODRICH and Others, Defendants; ASHBEL P. FITCH, as Comptroller of the City of New York, Appellant.

*Inheritance tax upon estates — fixing its amount — exclusive jurisdiction in the surrogate and his court — Laws of 1892, chap. 399, §§ 10, 11, 13, 15, 18.*

The Supreme Court, sitting as a court of equity, has no original jurisdiction to determine whether a trust fund is subject to the tax known as the collateral inheritance or transfer tax.

The fact that a complaint in an action asks for the construction of a will and for a determination of the persons entitled to share in a trust estate, does not make a case in which the Supreme Court, having jurisdiction over a part of the relief demanded in the action, will retain the case for the purpose of determining whether the fund is subject to a collateral inheritance tax under the laws of the State of New York.

Taxation is a matter outside of courts of equity, and jurisdiction of the transfer tax is, for all the purposes of fixing its amount in the first instance, conferred by statute solely upon the surrogate and his court.

The surrogate is, in effect, first made a taxing officer who, upon the report of his appraiser, enters an order fixing the tax "as of course;" from this determination an appeal lies to the surrogate sitting as a judge, when for the first time the proceeding takes on a judicial character.

The surrogate, in fixing in the first instance the amount of the tax, acts after the manner of an assessor, and this initial step in a tax, new to our system of taxation, can by the statute (Laws of 1892, chap. 399, §§ 10, 11, 13, 15, 18), be performed by him alone.

A complaint for the construction of a will asking, among other things, that the Supreme Court fix the transfer tax upon a trust estate, is demurrable.

APPEAL by the defendant, Ashbel P. Fitch, as comptroller of the city of New York, from an interlocutory judgment of the Supreme Court, made at a Special Term held in the county of New York and entered in the office of the clerk of the county of New York on the 15th day of February, 1895, overruling the said defendant's demurrer to the complaint.

*Emmet R. Olcott*, for the appellant.

*Frederick Seymour*, for the respondent.

PARKER, J.:

The plaintiff, who was appointed by the court to execute a trust created by the last will and testament of William G. Breese, after

the trustees named in the will had either died or been removed, commenced this suit, in which he asks for a construction of a certain provision of the will, and the direction of the court concerning it; that it be ascertained what persons are entitled to share in the trust estate, and their proportions; requests a settlement of his accounts, and that he be discharged as trustee with an allowance for commissions, costs and disbursements; and that the court ascertain whether the trust fund is subject to a collateral inheritance tax under the statutes of the State of New York. To so much of the complaint as seeks the judgment and direction of the court relating to the question whether the trust estate should pay a collateral inheritance tax, a demurrer was interposed by the defendant, Ashbel P. Fitch, as comptroller of the city of New York, "upon the ground that this court has no original jurisdiction to hear and determine whether the estates of deceased persons are subject to a collateral inheritance tax, or what was known on the 1st day of April, 1894, the date of the death of Cornelia F. Coster, as the 'transfer tax,' or to fix the amount of such tax, and that the jurisdiction of this court in that regard is limited to review on appeal at General Term all such proceedings as may be had to hear and determine all questions arising under the provisions of chapter 399 of the Laws of New York, entitled 'An act in relation to taxable transfers of property,' which took effect May 1, 1892, and under the acts prior thereto relating to such taxes, before a Surrogate's Court of any county of the State having jurisdiction to grant letters testamentary or of administration upon the estate of a decedent whose property is chargeable with any such tax, or to appoint a trustee of such estate or any part thereof, or to give ancillary letters thereupon, and that such jurisdiction to hear and determine as to the liability of estates of deceased persons is vested in the first instance in such Surrogate's Court only."

It will be observed that the demurrer does not present the question whether this case is of such a character as that a court of equity will take jurisdiction of it for the purpose of construing the will. And, therefore, the learned judge at Special Term proceeded, in the disposition of the question submitted, upon the view that the court having obtained jurisdiction for the special purpose of construing certain provisions of the will, it is within its province to

retain the case for all purposes necessary to a complete adjustment of the entire controversy.

It is the general rule that where this court has concurrent jurisdiction with the Surrogate's Court it will decline to take it unless for the purpose of affording special relief beyond the power of the Surrogate's Court. But if a case be presented which calls upon it to exercise its jurisdiction, it not unfrequently assumes jurisdiction of all matters either in controversy or necessarily connected with it, and decrees a settlement and distribution of an entire estate. (*Wager* v. *Wager*, 89 N. Y. 161; *Anderson* v. *Anderson*, 112 id. 115; *Sander* v. *Soutter*, 126 id. 193.)

In connection with this rule attention was given to the proposition equally well established, that in the absence of words of exclusion the conferring of jurisdiction upon one court does not operate to oust other courts before possessing it, for the reason that concurrent jurisdiction is not inconsistent. (*Cook* v. *State Natl. Bank of Boston*, 52 N. Y. 106.)

The courts have been frequently called upon to reassert this proposition in cases where jurisdiction has been conferred upon Surrogates' Courts by statute to perform certain duties which the Supreme Court had jurisdiction to perform. (*Widmayer* v. *Widmayer*, 76 Hun, 251; *Royce* v. *Adams*, 123 N. Y. 402.)

Section 2817 of the Code of Civil Procedure confers upon the Surrogate's Court jurisdiction to remove testamentary trustees for misconduct, but in *Widmayer's* case it was held that the facts presented a proper case for this court to take jurisdiction for the removal of a trustee.

Section 2818 authorizes the Surrogate's Court to appoint new trustees when a sole testamentary trustee dies, becomes a lunatic or is removed by a decree of the Surrogate's Court, and in *Royce's* case such an appointment was made by the Surrogate's Court where more than one trustee was named in the will, and the court said that it was not the purpose of the statute to confine the power of appointment to the case of a sole testamentary trustee. In that case the Supreme Court, as well as the Surrogate's Court, appointed the same persons as trustees, and the court held that if there was any doubt about the authority conferred by the surrogate's appointment, in view of the peculiar phraseology of the statute, there could

be no doubt but valid authority was conferred under their appointment by the Supreme Court.

It should be observed in passing that, in these cases and all others bearing upon this question to which the respondent calls our attention, the Supreme Court had jurisdiction to do the very things which the Surrogates' Courts were subsequently authorized to do by statute. Quite a different question is presented where the Legislature, by means of statutory enactment, confers upon a court an authority, although judicial in its character, but not regarded as a part of the jurisdiction of equity.

*Hogan* v. *Kavanagh* (138 N. Y. 417) and *Dunning* v. *Dunning* (82 Hun, 462) will serve as illustrations. In *Hogan's* case a question was presented which justified a court of equity in taking jurisdiction, and the trial resulted in an adjudication that a legacy bequeathed by the will of the testator Hogan should be made a specific lien on certain real estate, the lien enforced by a sale and the legacy paid out of the proceeds. The trial court proceeded upon the theory that when a court of equity has obtained jurisdiction of the case for one purpose, it may retain it for all purposes, and, appreciating the legal right of the creditors of the testator to be paid out of the proceeds of a sale of his real estate before legacies charged thereon could be paid, provided in the judgment decreeing a sale of the property that next after the payment of the expenses of sale, the proceeds should be applied to the payment of the debts of the decedent. This determination encountered no difficulty until it reached the Court of Appeals, when the judgment was so modified as to make the sale of the real estate for the payment of the legacies subject to the rights of creditors, who were to be paid out of the fund before the legatees, but only after the debts have been duly established in the Surrogate's Court and such proceedings had as would authorize proceedings for the sale of real estate for the payment of the debts of the testator. In presenting the reasons which induced such a modification of the judgment as practically transmitted to the Surrogate's Court all questions affecting the rights of creditors who were entitled to priority of payment over the legatees, the court said that the collection of debts from the real estate of a deceased debtor was never regarded as a part of the jurisdiction of courts of equity. That such "right was con-

ferred by statute, and it must be asserted and proved in the manner that the statute prescribes.    Here, the real estate of the deceased is directed to be sold for the payment of debts by the decree of a court of equity, without regard to any of the statutory steps that must precede such sale in the ordinary course of administration."

If the authority conferred by the statute under consideration were strictly judicial, and intended as an extension merely of the jurisdiction of the Surrogate's Court, the doctrine of *Hogan's* case would seem to be applicable, and sufficient to support a judgment sustaining the demurrer.

For, certainly, it must be said that, prior to the enactment of the statute in question, the collection and enforcement of taxes, and certainly of this tax, which came into existence at the same time as the method for its enforcement, never constituted a part of the jurisdiction of courts of equity.

Both of the cases cited *supra* are authority for the proposition that the Supreme Court will not attempt to draw to its jurisdiction questions remitted to a competent and sufficient authority by express command of a statute, which, in addition, establishes the procedure by which the rights of persons interested are to be affected.

For the purposes of the discussion next to be had, however, we shall only remember the rule established by the cases of *Widmayer* v. *Widmayer* and *Royce* v. *Adams* (*supra*).    Starting with the proposition, which was not challenged by the demurrer, that the complaint presented a case which called upon the court to take jurisdiction of the principal question, and having in mind the rule that in such a case the court may go on to a complete adjudication, although the Surrogate's Court may have concurrent jurisdiction of incidental questions involved, the conclusion was reached that the demurrer was not well taken.

But the argument advanced in support of this conclusion entirely omits consideration of the relation of the surrogate to the tax.    It seems that authority was conferred upon the Surrogate's Court in the first instance, to ascertain and determine, judicially, the amount of the tax, if any, to be paid, and upon that premise considered, with the fact that the statute does not in terms exclude any other court, it is argued that the Supreme Court, being a court

of general jurisdiction, may also assess and determine the tax if incidental to a complete determination of an estate of which it has taken jurisdiction for some special reason.

The premise, however, is faulty, in that the statute does not confer jurisdiction upon the Surrogate's Court as such, in the first instance, to assess and determine the tax.

The surrogate, as a taxing officer, after the appraiser has appraised the property, enters his order fixing the tax "as of course," and thereafter any' person aggrieved 'may appeal therefrom to the surrogate. By both the initial act of 1885, and the subsequent one of 1892, a special State tax, not belonging to the system of general taxation, was created.

In character it was so entirely different from the general plan of taxation that special agencies were necessary for its enforcement. What these agencies should be, and under what rules and regulations they should proceed to enforce collection of the tax, the Legislature alone had power to determine.

The courts can only interfere when a tax law transcends the legislative power. (*People ex rel. Panama R. R. Co.* v. *Commissioners of Taxes*, 104 N. Y. 240–250.) That, the statute in question does not do. (*Matter of McPherson*, 104 N. Y. 306.)

Instead of providing for the appointment of assessors, or collectors or taxing officers under some other name to execute the provisions of the law, the Legislature not unwisely determined that the surrogates of the several counties of the State were in a position to more economically and effectively enforce collection of the tax than any other agency that could be devised, and so the surrogates were made special taxing officers and charged with the duty of enforcing the collection of this special State tax, upon notice to those interested, and in the manner provided by the statute.

That the statute constituted the surrogate, and him alone, the assessing and taxing officer, and as such the only representative of the State in the first instance, for all purposes relating to the appraisement and taxation of property, will clearly appear from a brief reference to certain of its provisions.

By section 10 of the act of 1892 (Chap. 399) the Surrogate's Court is given "jurisdiction to hear and determine all questions arising under the provisions of this act."

Section 11 empowers "the surrogate," upon the application of any interested party, or upon his own motion and as often as occasion requires, "to fix the fair market value, at the time of the transfer thereof, of property of persons whose estates shall be subject to the payment of any tax imposed by this act."

Section 13 provides that the "surrogate," upon the report of an appraiser and other proof before him, or without appointing an appraiser, "shall forthwith, as of course, determine the cash value of all estates and the amount of tax to which the same are liable. * * * Any person dissatisfied with the appraisement or assessment and determination of tax may appeal therefrom to the surrogate within sixty days."

It is clear that the initial steps which the statute requires the surrogates to take are those of taxing officers and not of judges. He appoints an appraiser to appraise the cash value of the property. Upon the coming in of the report he may enter an order determining the cash value of the estate; the order may be based upon the report or upon any other proof before him, and this he does "as of course." But the party aggrieved may take an appeal from the order thus made to the "surrogate," and then for the first time the procedure takes on a judicial character. But it is no more so than that of a board of assessors, who are required to give public notice of the completion of the assessment roll, and the time when they will hear all parties aggrieved, at which time those who are dissatisfied may appeal to the board of assessors upon affidavits and other proofs, to make correction of the assessment roll in so far as it affects them.

By section 15 it is made the duty of the treasurer or comptroller in any county, having reason to believe that any tax is due and unpaid under the act, to notify the district attorney, who shall apply to the "Surrogate's Court" for a citation citing persons liable to pay such tax to appear before the court on a day specified.

Section 18 makes it the duty of the comptroller to furnish each surrogate with a tax book, which shall be a public record, where entries relating to estates subject to the tax shall be made.

The Court of Appeals, in discussing the question of the jurisdiction of the surrogate under the act of 1885 (*In Matter of Estate of Wolfe*, 137 N. Y. 205), used the following language: "As I read

the provisions of this act I think we must differ with the conclusions below, and that the proper construction of this act makes of the surrogate the assessing and taxing officer, and, as such, the representative of the State for the purposes relating to the appraisement and taxation of property.   *   *   *

"When we read all of the provisions of this act it is perfectly apparent that a special system of taxation was created for the benefit of the State, with all the necessary machinery for its working, the control with respect to which was vested in the Surrogate's Court, with a *jurisdiction exclusive* in its nature.

"In the assessment of a tax upon property passing by will or by the intestate law, the responsibility is imposed by the law upon the surrogate.  He acts for the State, and he is commanded to assess and fix the tax to which the property is liable.   *   *   *

"I can see no difference between the principle upon which the surrogate acts in proceeding to assess property for taxation under the act and that upon which, in the general system of taxation in the State, tax assessors act in the assessment of persons or property for purposes of taxation.  It is well settled, as to them, that in their proceedings they must determine the question of liability to taxation as a fact, which gives them jurisdiction to assess.  It is not only an important but it is a conditional step in the proceedings for the assessment."

"*In the Matter of the Estate of Ullman* (137 N. Y. 406) the court, after quoting the 15th section of the act of 1885, which read: 'The Surrogate's Court   *   *   *   shall have jurisdiction to hear and determine all questions in relation to the tax arising under the provisions of this act,' said, 'Aside from the ordinary jurisdiction of the surrogate, this is a special grant of power in broad and comprehensive language, and there can be no good reason for hampering the power thus conferred by any construction that would take from him the authority to decide every question that may arise in the proceeding before him which may be necessary in order to fully discharge the duties imposed upon him by the act.'

"Every officer charged with the duty of executing the taxing power, whether it be a surrogate or a town assessor, must necessarily

decide, in a judicial capacity, important questions of law in order to perform the duties of his office."

The language employed in the decisions from which we have quoted leaves no room for doubt that it is the judgment of the court of last resort that the power conferred on the surrogate by the statute is a taxing power, and that his authority to institute the proceedings is, like that of the town assessor, exclusive.

The Supreme Court has no jurisdiction to make an assessment which the town assessor is required to make in the first instance, nor has it, in the absence of statutory authority, the right to usurp the functions of the surrogate as a taxing officer under the Taxable Transfer Act.

The question of liability to taxation is a fact to be determined by the assessors and which gives them jurisdiction to assess. It is a conditional step in the proceeding for assessment. And the court cannot, in advance of action by the assessors, take that question away from them. Their action may be reviewed by the courts, and, if it be found that they assumed jurisdiction when they had it not, the wrong will be righted.

Authority to pass upon the merits of assessments has been conferred upon this court by statute (Chap. 269, Laws of 1880), but authority to assess or command the assessment of taxes is neither a part of the original jurisdiction of the Supreme Court, nor has it ever been conferred upon it by the Legislature, which alone has power to determine all questions of State necessity involved in ordering a tax, and in selecting the agencies for its collection.

The respondent calls attention to the fact that the Supreme Court has exercised jurisdiction in *Mc Vean* v. *Sheldon* (48 Hun, 163); *Catlin* v. *Trinity College* (49 id. 278 ; aff'd., 113 N. Y. 133), and *Talmadge* v. *Seaman* (61 N. Y. St. Repr. 73).

The first two cases were submitted on an agreed state of facts, and the last was a Special Term decision, and in neither of them was the question of jurisdiction raised.

The suggestion of respondent that because of the number of parties, and the great inconvenience which will result if it should be held that the surrogate must, in the first instance, exercise his prerogative as a taxing officer, should no more persuade a strained construction in this case than in *Hogan's Case* (*supra*). Indeed,

the argument of convenience has less merit in the case under consideration, for the complaint does not present a single question that could not have been passed upon in the Surrogate's Court.

The interlocutory judgment should be reversed, with costs of this appeal, and the demurrer sustained, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Interlocutory judgment reversed, with costs of appeal, and demurrer sustained, with costs.