THE STATE BANK OF PIKE, Respondent, *v.* GEORGE M. BROWN et al., Appellants.

EVIDENCE — ADMISSIBILITY OF BOOKS OF BANK IN ACTION AGAINST SURETIES ON CASHIER'S BOND. In an action by a bank, against the sureties upon the bond of its former cashier, the books of the bank and computations made therefrom are inadmissible in evidence against such sureties, where there is no proof that the entries relied upon were made by the cashier after the execution of the bond, or as to who made them, or that the persons making them were dead or without the jurisdiction of the court, or that they were made in the usual course of business in accordance with a uniform practice to make them when and precisely as the transactions occurred.

*State Bank* v. *Brown*, 29 App. Div. 627, reversed.

(Argued November 20, 1900; decided January 8, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 17, 1898, unanimously affirming a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought upon a bond dated January 2nd, 1893, signed by Earle S. White as principal, and by the defendants and others as sureties, to recover the sum of $2,467.36 alleged to be due the plaintiff thereon by reason of a breach of the condition thereof.

The bond was in the penal sum of $20,000, with the obligatory part in the usual form, and the following recital and condition underwritten: " Whereas, the above bounden Earle S. White has been elected Cashier of the State Bank of Pike, located and doing business in the Village of Pike, N. Y., by reason whereof divers sums of money, goods and chattels, the property of said bank, will come into his hands,

" Now, therefore, the condition of the above obligation is such that if the said Earle S. White, his executors or administrators or assigns, at the expiration of his term of office upon request to him or them made, shall make or give unto the said State Bank of Pike, or its agent or attorney, a just and true account of all such sums of money, goods or chattels, and other valuable things as have come into his hands, charge or possession, as cashier of the said bank, and shall pay over and deliver to his successor in office, or such other person as may be duly authorized to receive the same, all such sums of money, goods and chattels and other valuable things as shall appear to be in his hands and due by him to the said bank; then the above obligation to be void, else to remain in full force and virtue."

White was not a party to the action, but the answer of his sureties, among other defenses, set forth in substance a general denial.

The referee found that on the 12th of April, 1892, the plaintiff, a banking association incorporated under the laws of this state, employed White as its cashier; that on the 2nd of January, 1893, the bond in question was given; that White ceased to be cashier on the 15th of August, 1895, and that he had failed to pay over and deliver the following sums which came into his possession as cashier: $223.04 of bills and notes discounted; $361.08 of moneys deposited in the bank by persons not doing an active business, and $1,283 of moneys deposited for which certificates of deposit were issued. Judgment was directed and entered for the sum of $1,867.12, and after affirmance by the Appellate Division the defendants appealed to this court.

*C. S. Cary* for appellants. The admission in evidence of the books of the bank was error. ( *White* v. *Ambler*, 8 N. Y. 170; *C. B. Co.* v. *Lewis*, 63 Barb. 111; *O. Nat. Bank* v. *Carll*, 55 N. Y. 440; *Melvin* v. *Wood*, 4 Abb. [N. S.] 441; *Kellum* v. *Clark*, 97 N. Y. 390; *Thompson* v. *MacGregor*, 81 N. Y. 592; *Bissell* v. *Saxton*, 66 N. Y. 55; *Hatch* v. *Elkins*, 65 N. Y. 489.) None of the preliminaries necessary to make the books evidence, and memoranda or otherwise, was presented. (*Irish* v. *Horn*, 84 Hun, 121; *Dykman* v. *Northridge*, 61 N. Y. S. R. 863; *Silverman* v. *Simons*, 14 Misc. Rep. 222; *Lawrence* v. *Barker*, 5 Wend. 301; *McKay* v. *Overton*, 65 Tex. 82.)

*G. S. Van Gorder* for respondent. The books introduced in evidence were the journal and the ledger, commonly called "Daily Statement Register," and were kept by White, and the entries therein made in the course of his duties as cashier were evidence, both against him and his sureties. (Whart. on Ev. § 1212; *M. L. Ins. Co.* v. *Callan*, 23 N. Y. S. R. 629; *Humphrey* v. *People*, 18 Hun, 393; *W. Ins. Co.* v. *Frothingham*, 122 Mass. 391; Abb. Tr. Ev. [2d ed.] 636; *Bank of Brighton* v. *Smith*, 12 Allen, 243; *U. S. Assn.* v. *Edwards*, 47 Mo. 445; *Atlas Bank* v. *Brownell*, 9 R. I. 168; *Olney* v. *Chadsey*, 7 R. I. 224; *Snell* v. *Allen*, 1 Swan [Tenn.], 208; *Bartlett* v. *Board of Education*, 59 Ill. 364.)

VANN, J. The burden of proof was upon the plaintiff to show that the condition of the bond was broken by the failure of White, "at the expiration of his term of office," and "upon request to him" made, either to render the just and true account required, or to pay over and deliver the moneys and other valuable things which had come into his possession as cashier. In order to meet the burden of proof the plaintiff read in evidence, under objection and exception, its by-laws, which, in specifying the duties of the cashier, among other things, provided that he should "keep a full and complete set of books of the association, showing a systematic and accurate

exhibit of the affairs of the association, such as are usually kept in well-conducted banking institutions." They also provided that he should have " personal supervision  *  *  * of the taking and discounting of commercial paper."

Next, without any preliminary proof, it offered in evidence the books of the bank, or such parts thereof as were applicable. The books were separately received subject to the objection that each was immaterial and incompetent as against the defendants, who duly excepted to the various rulings admitting them. Under exceptions founded on similar objections certain computations, made by a witness from these books, were received, which tended to show the different items of shortage precisely as found by the referee. The following questions, rulings and answers illustrate the nature of this evidence and the method of introducing it: " Q. State what you have done with reference to the items, bills discounted, in the same manner. State the computation you have made and the statement as contained of that item of bills discounted, and the result of your computation?" This was objected to by the defendant " as immaterial and incompetent; that the entries upon the books from which the computation is made are not evidence as against the defendants," and " that it does not appear that the defendants' principal made those entries or was in any way responsible for them." The objection was overruled, the defendants excepted and the witness answered: " I took the accounts themselves representing notes and bills discounted, listed them and footed them. I found there was $90,813.33. The daily statement register shows $91,036.37, a difference of $223.04. That was a shortage in the bills discounted. I proved up the certificates of deposit and made the computation of them. Q. State what you found with reference to that." This was objected to as before and upon the further ground that the certificates of deposit should be produced as they were the best evidence, but the objection was overruled and the defendants again excepted. The witness then stated his computations as before and testified that they showed a shortage in certificates of deposit of $1,283.

Subsequently the certificates were produced, but as to the other accounts there was no evidence to establish a breach of the condition of the bond, except the bare fact that the books showed a shortage. The expert who made the computations testified: "The question as to whether there was this discrepancy of $223.04 is determined by me from the examination of the entries in the books made prior to January, 1893, and my examination of books and bills receivable, as I found them on August 15th, 1895." This necessarily included entries made before the bond was given.

After the books and computations were thus received it appeared that the journal and ledger were kept principally by White, but that the auxiliary books were kept by other persons, one of whom was living within the state at the time of the trial. It did not appear whether White was then within reach of a subpœna or not, but it was shown that he disappeared about the 15th of August, 1895, and no further evidence was given on the subject.

The entries made by White after the bond was given, were admissible against his sureties, because they were the acts of their principal relating to the money and property in his custody which they had promised he should account for and pay over. The entries read in evidence, however, did not appear to have been made by him. The defendants were not responsible for the way in which he discharged his general duties as cashier, but only for his failure to render a just account of what came into his hands in that capacity and to pay over and deliver accordingly. They were strangers to the books of the bank. They had no right of access to them, and the entries made therein by persons other than White were no more binding upon them than upon the public generally. Neither the books nor the by-laws are referred to in the bond. The duties imposed upon White by the bond were not those imposed upon him by the by-laws, and the former were not to be performed until after the latter had ceased through the expiration of his term of office as cashier. The bond did not make the books evidence, and, aside from the

entries made by White after the date of the bond, they could be lawfully received against the defendants to the extent only that they were admissible against strangers generally, according to the principles of the common law governing the subject.

Without any preparatory proof the books were admitted *in solido* as evidence *per se* against the sureties. They were received upon the mere statement that they were the books of the bank made by a witness who never saw them until after White had ceased to be cashier. There was no proof of original entries by the persons who made them and none even of their handwriting, custom or duties. The testimony subsequently given did not relieve the situation, for, while it appeared that the journal and ledger were mainly kept by White, it did not appear that the entries in question were made by him, and the auxiliary books were kept by other persons, one of whom, at least, could have been produced as a witness. The computations were not admissible unless the books were admissible, because they were made solely from the books and were of no importance except as summary statements of the contents of the books. They were made in part from entries of an earlier date than the bond.

All the entries, except those made by White after the execution of the bond, were hearsay evidence as against the defendants. They were the written statements of third persons, made without the sanction of an oath, with no proof as to who made them, or that the person making them was dead, or without the jurisdiction of the court, or that they were made in the usual course of business in accordance with a uniform practice to make them when the transactions occurred and to make them precisely as they occurred. For aught that appears they may have been false when made to the knowledge of the person making them. Neither the books nor the computations made, therefore, were admissible against the defendants, because the necessary conditions precedent were not complied with by the plaintiff. (*Ocean Nat. Bank* v. *Carll*, 55 N. Y. 440 ; *White* v. *Ambler*, 8 N. Y. 170 ; *Bank of Monroe* v. *Cul-*

*ver,* 2 Hill, 531; *Brewster* v. *Doane,* 2 Hill, 537.) This case should not be confounded with those which authorize books to be read in evidence after a proper foundation has been laid (*Smith* v. *Smith,* 163 N. Y. 168; *Matter of McGoldrick* v. *Traphagen,* 88 N. Y. 334; *First Nat. Bank of Whitehall* v. *Tisdale,* 84 N. Y. 655; *Vosburgh* v. *Thayer,* 12 Johns. 461; 1 Greenl. Ev. [14th ed.] § 115; 2 Wharton on Ev. [3d ed.] § 681; 2 Rice on Ev. 815), nor with those which sanction as competent entries made upon the books of a copartnership in the regular course of business as against the copartners having access thereto. (*Hotopp* v. *Huber,* 160 N. Y. 524; *Flour City Nat. Bank* v. *Widener,* 163 N. Y. 276.) We do not hold that the pertinent entries in the books were not admissible under any circumstances, but simply that they were not admissible when offered, and were not made admissible by any evidence subsequently received.

As the books were the foundation of the judgment rendered by the referee as to all of the recovery, at least, except the part relating to certificates of deposit, the incompetent evidence necessarily affected the result and requires a reversal.

The judgment should be reversed and a new trial granted, with costs to abide the event.

O'BRIEN, BARTLETT, HAIGHT, MARTIN, LANDON and CULLEN, JJ., concur.

Judgment reversed, etc.