STATE EX REL. PABST BREWING COMPANY VS. CARPENTER, County Judge, and another.

*May 12—June 21, 1906.*

*Taxation: Inheritances: Determining value: Powers of county court: Compelling corporation to produce books, etc.*

Ch. 44, Laws of 1903, imposing a tax upon inheritances and authorizing the county court, with or without the appointment of an appraiser, to ascertain and determine the value of the estate, and for that purpose to compel the attendance of witnesses, etc., does not empower the court to compel a corporation in which the decedent was a stockholder to produce its private books and papers in court to aid in determining the value of the stock so held.

PROHIBITION to the county court of Milwaukee county: PAUL D. CARPENTER, County Judge. *Peremptory writ awarded.*

This is an alternative writ of prohibition issued by this court to the county court of Milwaukee county, March 28, 1906. It appears from the verified petition for and the return to the writ that Frederick Pabst of Milwaukee died testate January 1, 1904, leaving a very large estate. His will was admitted to probate February 3, 1904, and executors appointed and qualified. The executors filed an inventory of said estate showing, among other things, that said deceased at the time of his death was the owner and holder of 1,918 shares of the capital stock of the said relator of the face value of $1,000 per share. December 29, 1904, the executors presented to the county treasurer a statement of the property belonging to said estate, with provisional valuations and a computation of the amount due the state for the tax prescribed by ch. 44, Laws of 1903, and paid the same to such treasurer, subject to correction and readjustment on final determination, and without waiver of the right to insist on the return of the same in case the act should be held to be invalid, and

took a receipt duly countersigned for the amount so paid. December 14, 1905, the county court, on petition of the secretary of state, therein ordered that February 1, 1906, or as soon thereafter as said petition could be heard, the matters therein should be heard before said county court, without the appointment of any appraisers, at the courthouse in Milwaukee, at which time and place the county court would hear evidence and determine the cash value of said estate and the amount of such inheritance tax. Thereafter, and upon such hearing, the value of said stock was in controversy. Without offering other evidence the state demanded the production of the books and records of the relator, and on March 19, 1906, a subpœna was served upon the secretary of the relator requiring him to appear before said county judge on the next day and then and there give evidence on behalf of the state in said matter, and then and there to have "the trial balances made out and prepared by the *Pabst Brewing Company* about January 1, 1903, and January 1, 1904, and all the books of account, cash books, ledgers, stock books, and other books, papers, and documents from which said trial balances were made out or prepared and belonging to said company." A subpœna was also issued and served upon the president of said corporation, who was also one of the executors of said will, requiring him to appear at the same time and place, and then and there to have "all the private books of account kept by said Frederick Pabst and all papers and certificates of stock and other documents bearing upon or relating to the stock of the *Pabst Brewing Company* owned by said Frederick Pabst and all books of account kept by the executors of the last will and testament of said Frederick Pabst, deceased."

At said hearing the said executor did have, and was ready to produce, all the books and papers mentioned in said last subpœna issued to said executor. The state then and there demanded the production of the books and papers mentioned in the first subpœna so issued to the relator's secretary for the

purpose of using the same as evidence in said matter. The relator then and there objected to such production and use and claimed that the said county court had no right to require the same. The relator alleges that under the act mentioned the inheritance tax prescribed was to be laid upon the fair market value of such stock; whereas, the only value which could be established from such books and papers would be the book value thereof, which is not the market value thereof and is not material or pertinent upon the inquiry before the county court, but that upon such hearing said executors offered to produce the trial balances for several years prior to the death of the deceased; that the relator is a corporation with a capital stock of $10,000,000 owned by about twenty stockholders, and does business and owns property in nearly all the states of the Union; that to submit all its books and papers to inspection and expert investigation would be a grievous burden and great expense to the relator, and would not tend to establish the market value of its stock or the value upon which such inheritance tax should be calculated. The relator claims that the county court had no jurisdiction to compel the production of its books and papers for the inspection of expert bookkeepers or counsel for the state, and also denies the validity of the act mentioned.

The county court overruled each and all of such objections and claims made by the relator. The alternative writ of prohibition commands the county court to desist from further proceedings to compel the relator to produce its books and papers upon the appraisal of the estate of the deceased, and to show cause why the peremptory writ should not issue as prayed.

For the relator there was a brief by *Winkler, Flanders, Smith, Bottum & Fawsett,* attorneys, and *Hugh Ryan,* of counsel, and oral argument by *Mr. F. C. Winkler* and *Mr. Ryan.* They argued, among other things, that this is a new law imposing special and onerous burdens in addition to general taxes. It is not to be extended beyond the express terms

of its provisions. *In re Enston,* 113 N. Y. 174, 177, 178; *In re Bishop,* 82 App. Div. 112, 116. Inquisitorial methods can be justified no further than they are authorized by positive law. The facts sought to be shown can be readily proven by the testimony of witnesses. The books of the corporation are not competent or original evidence against the executors or those whom they represent in this proceeding. If the assets and liabilities of a third person are a material fact to be determined in the controversy in the county court, the statements which that party has made upon his private books on the subject are not competent evidence. It is mere hearsay. And of course it matters not that the third person is a corporation. The facts must be proven by testimony under oath. These rules would govern if the appraisal were a regular judicial proceeding. They become more emphatic when it is remembered that the county court in making this appraisal acts in the capacity of an "assessing or taxing officer" only. Our law is taken from New York; and it was so held by the highest authority in that state. *Estate of Wolfe,* 137 N. Y. 205; *Weston v. Goodrich,* 86 Hun, 194; Dos Passos, Inheritance Tax Law (2d ed.) § 50. That a corporation will not be ordered to open and submit its books and papers to examination in an action or proceeding to which it is not a party, see *Henry v. Travelers' Ins. Co.* 35 Fed. 15; *In re Horgan,* 97 Fed. 319; *Southern R. Co. v. N. C. Corp. Comm.* 104 Fed. 700. We do not deny the efficiency of a subpœna *duces tecum* to compel a third person to produce a document or written instrument of any kind in his possession which is material to litigants. But we do submit that it must be an instrument or writing which has probative force upon the controversy in litigation. These books, as evidence of what property the corporation owned or what it was worth, stand upon the same footing with the official report of the officers of a national bank to the comptroller of the currency, which proves nothing. *Patterson v. Plummer,* 10 N. Dak. 95, 86 N. W. 111.

The *Attorney General,* and *T. C. Richmond,* special coun-

sel, for the defendants. They contended, *inter alia,* that in the absence of a known market value the proper method of proving the market value of corporate stock is by proof of its actual value. 2 Cook, Corp. (5th ed.) § 581; 1 Spelling, Priv. Corp. § 499; *Greer v. Lafayette Co. Bank,* 128 Mo. 559; *Brinkerhoff-Farris T. & S. Co. v. Home L. Co.* 118 Mo. 587; *State ex rel. v. Carpenter,* 51 Ohio St. 83; *Freon v. Carriage Co.* 42 Ohio St. 30; *Beaty v. Johnston,* 66 Ark. 529; *Hitchcock v. McElrath,* 72 Cal. 565; *Hewitt v. State,* 118 Mo. 463; *McDonald v. Danahy,* 196 Ill. 133, 63 N. E. 648; *Moffitt v. Hereford,* 132 Mo. 513, 34 S. W. 252; McElroy, Transfer Tax Law of N. Y. § 317; *Estate of Brandreth,* 59 N. Y. Supp. 1092. To aid in determining such value in this case the county court has jurisdiction to order the production of the books of the relator corporation. As to the authority of a court to compel a corporation not a party to produce its books, see *Wertheim v. Cont. R. & T. Co.* 15 Fed. 716; *Johnson S. St. R. Co. v. North B. S. Co.* 48 Fed. 191; *Kirkpatrick v. Pope Mfg. Co.* 61 Fed. 46; *In re Hirsch,* 74 Fed. 928. In other cases the doctrine of the *Wertheim Case,* above cited, in its broadest application, is seemingly doubted. *Southern R. Co. v. N. C. Corp. Comm.* 104 Fed. 700; *Henry v. Travelers' Ins. Co.* 35 Fed. 15; *In re Pac. R. Comm.* 32 Fed. 241, 250; *Crocker-Wheeler Co. v. Bullock,* 134 Fed. 241; *Perry v. Rubber T. W. Co.* 138 Fed. 836. But the rule remains unshaken that production of books may be compelled where, as here, it is necessary and vital to the interests of the parties, and where they are relevant and the evidence sought cannot be obtained in any other way. See, also, *Bull v. Loveland,* 10 Pick. 9; *U. S. Exp. Co. v. Henderson,* 69 Iowa, 40, 28 N. W. 426; 3 Jones, Ev. § 802; Stats. 1898, sec. 4053; *Winder v. Diffenderffer,* 2 Bland (Md.) 166.

Cassoday, C. J. This court took original jurisdiction in this case because it involved the validity of ch. 44, Laws of

1903, and the same question was involved in another action pending before us on an order for re-argument, and so it was desirable that such question should be fully argued before determination. The decision in that case has made it unnecessary to say anything further about the validity of that act in this case. *Nunnemacher v. State, post,* p. 190, 108 N. W. 627. As indicated in the foregoing statement, the executors of Frederick Pabst, deceased, in obedience to the subpœna *duces tecum* served upon them, brought into the county court, and were ready to produce, "all the private books of account kept by" said deceased, "and all papers and certificates of stock and other documents bearing upon or relating to the stock of the *Pabst Brewing Company* owned by said" deceased, "and all books of account kept by the executors of the last will and testament of said deceased." But the relator did not obey the subpœna *duces tecum* so served upon its secretary and bring into court its "books of account, cash books, ledgers, stock books, and other books, papers, and documents," and its "trial balances made out and prepared" about January 1, 1903, and January 1, 1904, nor any of them, on the alleged ground that the county court had no authority or jurisdiction to compel such production.

The question, sharply presented, is whether the county court had such authority and jurisdiction. As indicated, the deceased was a large stockholder in the relator at the time of his death. The state contends that it became essential for the county court "to ascertain the fair market value" of such stock in order "to determine the inheritance tax" that the estate was required to pay, and the state concedes that "this is practically the only property in the state concerning which there is controversy as to the proper valuation." The relator concedes, in the language of the act, that "the tax so imposed" is to "be upon the clear market value of such property." Sec. 1, subd. 6. The relator also concedes that such value is to be determined either by the appraiser, appointed

for that purpose under secs. 13 and 14 of the act, or by the county court, as prescribed by sec. 15 of the act. In case an appraiser is appointed, he is therein required to fix and appraise the property "at its fair market value, . . . and for that purpose the said appraiser is authorized to issue subpœnas and to compel the attendance of witnesses before him and to take the evidence of such witnesses under oath concerning such property and the value thereof; and he shall make report thereof and of such value in writing, to the said county court, together with the depositions of the witnesses examined, and such other facts in relation thereto and to the said matter as the said county court may order or require." Sec. 14. And then, after requiring "the county court from such report *and other proofs* relating to any such estate" to "determine the cash value of such estate and the amount of tax to which the same is liable," the act provides as follows:

"Or the county court without appointing an appraiser, upon giving twenty days' notice . . . of the time and place of hearing, may at the time so fixed hear evidence and determine the cash value of such estate and the amount of tax to which the same is liable." Sec. 15.

Another section of the act declares:

"The county court . . . shall have jurisdiction to hear and determine all questions arising under the provisions of this act, and to do any act in relation thereto authorized by law to be done by a county court in other matters or proceedings coming within its jurisdiction." Sec. 12.

The language of the act seems to authorize the county court,. with or without the appointment of an appraiser, to ascertain and determine such value of said estate, and for that purpose compel the attendance of witnesses and the taking of their testimony under oath. This seems to be conceded by the relator.

The mere fact that competent, material, and relevant testimony may be contained in the books of a third party or a corporation, and that it is inconvenient to produce them in court,.

is no excuse for disobeying a subpœna. *Wertheim v. Continental R. & T. Co.* 15 Fed. 716; *U. S. v. Babcock,* 3 Dill. 566, Fed. Cas. No. 14,484; *Johnson S. St. R. Co. v. North B. S. Co.* 48 Fed. 191, 195; *Amey v. Long,* 1 Camp. 14.

The relator contends that the county court had no power to compel the production of its private books and papers for inspection. The mere fact that the stock in question was issued by the relator did not make it a party to the controversy in respect to its value. That controversy was between the executors of the estate and the state of Wisconsin. Since the relator was not a party to that controversy, it is very obvious that the case presented does not come within the statutes requiring a party to produce books, papers, and documents, or copies thereof, or to give permission to take such copies. Secs. 4096, 4183 *et seq.,* Stats. 1898. Nor is there any claim that such books and papers of the relator contain any entries or admissions made by the deceased respecting such value of the stock in question or otherwise. Sec. 4189, Stats. 1898. See *State Bank v. Brown,* 165 N. Y. 216, 59 N. E. 1. True, the secretary of state alleges, upon information and belief, that there is "no other way of getting at the fair market value of said stock than by examining the books of said relator." But he fails to show how that way would be effectual; besides, such allegation was put in issue by the relator, and there is no proof nor showing of any facts in support of it. Whatever entries, statements, or memoranda may be contained in such books and papers must be regarded as having been put therein by the officers or agents of the relator and for its private use or benefit. The question recurs whether the relator is compellable to produce such private entries, statements, and memoranda for inspection in the controversy between the other parties mentioned.

In an English case, cited by counsel for the state, the court refused to compel the secretary and solicitor of a railway company to produce certain books and documents, because the di-

rectors of the corporation were not parties to the controversy and refused to allow him to do so. *Crowther v. Appleby*, L. R. 9 C. P. Cas. 23. See *Doe d. Haden v. Burton*, 9 C. & P. 254. It has been held in New York:

"The books of a bank, not kept by either of the parties to an action, nor relating to transactions between them, but referring solely to transactions between the defendant and the bank, are not competent evidence, between the parties, to show the amount of paper which has been discounted by the bank for the defendant and the number of notes so discounted and renewed. And a statement made up from such books is equally incompetent." *Perrine v. Hotchkiss*, 58 Barb. 77.

To the same effect: *Isham v. Schafer*, 60 Barb. 317; *State Bank v. Brown*, 165 N. Y. 216, 59 N. E. 1, 53 L. R. A. 513. In the note to this last citation it is said:

"The general rule is that a person's books of account cannot be used as evidence upon issues between third persons; that entries in such books as to such third persons are *res inter alios acta* and cannot be used against persons not parties to them."

To the same effect: 2 Ency. of Ev. 667; *Kerns v. McKean*, 65 Cal. 411, 4 Pac. 404; *Treat v. Barber*, 7 Conn. 274; *Mercier v. Copelan*, 73 Ga. 636; *Powers v. H. & L. R. Co.* 33 Ohio St. 429; *Martin Brown Co. v. Perrill*, 77 Tex. 199, 13 S. W. 975; *Holt v. Pie*, 120 Pa. St. 425, 14 Atl. 389; *Minton v. Underwood L. Co.* 79 Wis. 646, 48 N. W. 857. So, in a case cited by counsel for the state it was held that:

"The court will not grant a motion to compel the opening of the records of a corporation not a party to the suit, but whose records, it is claimed, would disclose something of importance to the litigation." *Henry v. Travelers' Ins. Co.* 35 Fed. 15.

In the absence of circumstances not present here, such supposed entries and statements made in the books, papers, and documents of the relator by its officers or agents have no more probative force as evidence in court, in the controversy be-

tween the executors and the state of *Wisconsin,* than oral dec-
larations to the same effect, made by the same officers or agents,
would have had. Such entries and statements were obviously
mere hearsay made by third parties without the sanction of
an oath. Such are the rules of evidence applicable in regular
judicial proceedings.

Counsel for the relator claim that such rules should be ap-
plied with more stringency in a case where, as here, the county
court was acting as an appraiser and engaged in securing wit-
nesses and hearing evidence as to the value of the stock in
question. In support of such contention counsel cite a case
in New York, where, "under the provisions of the collateral
inheritance act," it was held:

"In reference to fixing the value of property for the pur-
pose of assessment and taxation, the surrogate is made the
assessing and taxing officer and as such is the representative
of the state." *Estate of Wolfe,* 137 N. Y. 205, 33 N. E. 156.
See, also, *Estate of Ullmann,* 137 N. Y. 403, 407, 33 N. E.
480; *Amherst College v. Ritch,* 151 N. Y. 282, 343, 45 N. E.
876.

But in another case in that state, cited by the same counsel,
it is said by the court:

"The statute does not confer jurisdiction upon the surro-
gate's court as such, in the first instance, to assess and deter-
mine the tax. The surrogate, as a taxing officer, after the
appraiser has appraised the property, enters his order fixing
the tax 'as of course,' and thereafter any person aggrieved
may appeal therefrom *to the surrogate.* . . . It is clear that
the initial steps which the statute requires the surrogates to
take are those of taxing officers, and not of judges." *Weston
v. Goodrich,* 86 Hun, 194, 199, 200, 33 N. Y. Supp. 382.

But, as indicated, our ch. 44, Laws of 1903, authorizes the
county court, with or without the appointment of an ap-
praiser, to ascertain and determine the value of the estate and
to compel the attendance of witnesses and the taking of their
testimony under oath. But there is nothing in the statutes
authorizing the county court, whether acting as a judicial

tribunal or as an appraiser, to compel a third party, under the facts and circumstances presented in this record, to produce his or its private books, papers, and documents for inspection, and certainly the county court has no such power in the absence of statutory authority.

Upon the case presented and the rules of procedure sanctioned by this court, the relator is entitled to a writ of prohibition. *State ex rel. Att'y Gen. v. Circuit Judge,* 97 Wis. 1, 15, 72 N. W. 193; *State ex rel. Rose v. Superior Court,* 105 Wis. 651, 81 N. W. 1046. No costs allowed, except the relator must pay the fees of the clerk of this court.

*By the Court.*—The peremptory writ of prohibition is hereby awarded as prayed by the relator.