WILL OF PORTER: STATE, Appellant, vs. PORTER, Executor,
Respondent.

*October 11—November 8, 1922.*

*Taxation: Inheritance tax: Value of corporate stock: Evidence:
Income return of corporations: County court as "public of-
ficial:" New trial: Discretion of appellate court.*

1. In the absence of a known market value, the proper method of
   establishing the value of corporate stock is by proof of its
   actual value.
2. In proceedings to fix the value of stock owned by a decedent
   for inheritance-tax purposes, the books of the corporation are
   not admissible to prove the actual value of the stock, since
   the entries do not constitute an admission of the stockholder,
   and, not having been made under oath, are mere hearsay.
3. Under sec. 71.20, Stats., making the information contained in
   income-tax returns to the tax commission accessible to
   "public officials charged with the duty of assessing" the prop-
   erty valued therein "for taxation or of supervising the assess-
   ment thereof," a copy of the income-tax report made by a
   corporation to the tax commission was not admissible in
   proceedings in the county court to fix the value of stock
   owned by a decedent for inheritance-tax purposes under sec.
   72.12 *et seq.,* Stats., on the theory that the county court was
   a public official charged with the duty of assessing an inher-
   itance tax.
4. Under the Wisconsin inheritance tax law the county judge has
   no function to perform, the county court and not the county
   judge determining the value of the estate for inheritance-tax
   purposes.
5. On appeal by the state from a judgment of a county court
   fixing the amount of an inheritance tax, where the evidence
   in the record suggests that the actual value of the physical

assets of the corporation is greatly in excess of that on which the county court based its judgment, and it is apparent that on another trial the actual value can be shown by competent testimony, this court will exercise the discretion vested in it by sec. 2405$m$, Stats., and will reverse the judgment and remand the cause for a new trial, though there was no evidence upon which the county court could have fixed the value at a greater amount than it did.

APPEAL from a judgment of the county court of Eau Claire county: GEORGE L. BLUM, Judge. *Reversed.*

The appeal is from a judgment fixing and determining the inheritance tax to be paid upon the estate of Kate M. Porter, deceased.

Upon the admission of the will to probate, George B. Wheeler and Knute Anderson, two prominent business men of the city of Eau Claire, being respectively the president and vice-president of the Union National Bank, were appointed general appraisers of the estate. The estate was appraised by them at the sum of $382,223.18. This included 313 shares of stock (par value $100 each) of the Northwestern Lumber Company, a Wisconsin corporation, which was appraised at the sum of $300 a share. The public administrator of Eau Claire county, while acquiescing in the values placed upon the other properties comprising the estate, objected to the value placed by the general appraisers upon the Northwestern Lumber Company stock for inheritance-tax purposes. A hearing was had in county court for the purpose of fixing the value of this stock for inheritance-tax purposes. The appraisers were both sworn, who testified that their appraisal was based upon information received from the president of the company. They testified that they had knowledge, in a general way, of the affairs of the lumber company, knew the officers thereof, and felt that the appraisal of $300 a share fairly represented the market value of the stock. They did not pretend to know anything about the book value of the stock; but from the fact that it was a close corporation, that any one

buying stock therein would necessarily become a minority stockholder, that the company was in the process of liquidation, which, owing to the character of the assets of the concern, was bound to be a slow and expensive process, it seemed extremely unlikely that stock of the corporation offered for sale upon the market would bring more than $300 per share.

*Gilbert Porter,* the executor and one of the heirs, seemed to possess considerable knowledge concerning the affairs of the company. It appears that his father was one of the organizers of the company and that after his death the said *Gilbert Porter* was, for a short time, a stockholder in the company. While admitting that the book value of the stock much exceeded $300 per share, he gave it as his opinion, based on the same reasons which prompted the others, that $300 per share was the fair market value of the stock. Testimony of the same nature was given by the president of the company, Col. J. T. Barber.

This testimony was offered by the executor. Upon request of the public administrator the hearing was adjourned, and upon the subsequent hearing an offer was made to introduce in evidence the income-tax report filed with the tax commission by the lumber company about three months prior to Mrs. Porter's death. This was objected to and excluded. An attempt was made to show the value of the assets of the company, for which purpose various officers of the company were called. None of them, however, claimed to have personal knowledge with reference to the value of any of the assets and the effort in this respect was entirely fruitless.

The county court held that there was no evidence upon which the stock could be valued at more than $300 per share. A judgment was entered fixing the value thereof at $300 per share for inheritance-tax purposes. From such judgment the State brings this appeal.

For the appellant there was a brief by *Fred Arnold,*

public administrator of Eau Claire county; *John Harring-
ton* of Madison, inheritance tax counsel, of counsel; and
the *Attorney General* and *Franklin E. Bump,* assistant at-
torney general; and the cause was argued orally by *Mr.
Harrington, Mr. Arnold,* and *Mr. Bump.*

*Roy P. Wilcox* of Eau Claire, for the respondent.

OWEN, J.   It is conceded that the Northwestern Lumber
Company is what is known as a close corporation, and that
for many years prior to the death of Mrs. Porter there
have been no sales of its stock to which reference may be
had for the purpose of fixing the market value thereof.
Appellant contends that in the absence of a known market
value the proper method of establishing the value of cor-
porate stock is by proof of its actual value.   2 Cook, Corp.
(5th ed.) § 581; *Greer v. Lafayette Co. Bank,* 128 Mo.
559, 30 S. W. 319; *McDonald v. Danahy,* 196 Ill. 133, 63
N. E. 648; *Estate of Brandreth,* 28 Misc. 468, 59 N. Y.
Supp. 1092.   This contention is conceded by the respondent.
The debated question here is whether any competent evi-
dence was offered or received tending to prove its actual
value as distinguished from the market value.   On the part
of appellant it is contended that the verified copy of the
income-tax report made by the lumber company to the tax
commission, which disclosed the book value of the assets
of the corporation, should have been received in evidence.
To this contention there are two effectual answers.

It was held in *State ex rel. Pabst B. Co. v. Carpenter,* 129
Wis. 180, 108 N. W. 641, in a similar contest between the
state and the executors of the estate of a stockholder in the
Pabst Brewing Company, that "entries and statements made
in the books, papers, and documents of the relator [Pabst
Brewing Company] by its officers or agents have no more
probative force as evidence in court, in the controversy be-
tween the executors and the state of Wisconsin, than oral
declarations to the same effect, made by the same officers

or agents, would have had. Such entries and statements were obviously mere hearsay made by third parties without the sanction of an oath. Such are the rules of evidence applicable in regular judicial proceedings." Unless the principle there announced is to be overruled, the books of the corporation were not admissible in evidence for the purpose of proving the actual value of the corporate stock. The book value does not necessarily reflect the actual value, and as the entries do not constitute an admission of the stockholder it should not be binding upon him or upon his estate. The values appearing upon the books are not values made under oath, and, as to the stockholder or his estate, are mere hearsay. The rule announced in *State ex rel. Pabst B. Co. v. Carpenter, supra,* is not only well sustained by authority but is sound in principle.

If the books themselves were not admissible in evidence for the purpose of proving the actual value of the assets of the company, certainly a copy of the books, or of a balance sheet taken from the books, is not admissible unless made so by statute, which appellant contends to be the case with reference to the certified copy of the books constituting the report of the company for income-tax purposes made shortly prior to the death of Mrs. Porter.

As the income tax law was originally enacted (ch. 658, Laws 1911), it was provided in sec. 1087m—24, in effect, that information contained in income-tax reports should not be divulged to any person in any manner except as provided by law. This provision was amended by ch. 638, Laws 1919, by adding thereto the following: ￢

"Provided, that any and all information contained in income tax returns and in the statements and correspondence pertaining thereto relating to the ownership or value of property shall be furnished or made accessible to all public officials charged with the duty of assessing the same for taxation or of supervising the assessment thereof, under such rules and regulations as the tax commission shall prescribe, . . . and all such returns and the statements and

correspondence relating thereto may be produced in evidence in any action or proceeding, civil or criminal, directly pertaining to such returns or the assessment made thereon."

This section, as amended, now appears as sec. 71.20 in the present Statutes.

It is argued that the county court is a public official charged with the duty of assessing an inheritance tax upon the estate of Kate M. Porter, deceased, and that the legislative provision just quoted makes the income-tax report of the corporation available to the county court to enable it to determine the value of the Northwestern Lumber Company stock.

While it has been held that under the inheritance tax law of the state of New York the surrogate is an assessing and taxing officer (*Estate of Wolfe,* 137 N. Y. 205, 33 N. E. 156; *Estate of Ullmann,* 137 N. Y. 403, 33 N. E. 480; *Trustees of Amherst College v. Ritch,* 151 N. Y. 282, 45 N. E. 876), it is to be noted that an appeal lies from the order of the surrogate to the surrogate's court. *Weston v. Goodrich,* 86 Hun, 194, 33 N. Y. Supp. 382. Under our inheritance tax law the county judge has no function to perform. The value of the estate for inheritance-tax purposes is determined by the county court either with or without the appointment of an appraiser. Sec. 72.12 *et seq.,* Stats.; *State ex rel. Pabst B. Co. v. Carpenter,* 129 Wis. 180, 108 N. W. 641. It is the county court and not the county judge that performs this service. While the valuation of property for assessment and taxation purposes is a judicial function even though performed by a ministerial officer (*Stanley v. Supervisors,* 121 U. S. 535, 550, 7 Sup. Ct. 1234; *City of New York v. McLean,* 170 N. Y. 374, 383, 63 N. E. 380; *State ex rel. Gage v. Probate Court,* 112 Minn. 279, 128 N. W. 18), the exercise of the function either by a court or a ministerial officer does not transform the one into the other. It does not make a court of a ministerial officer nor a ministerial officer of a court. It is clear that

the county court acts as a court and not as a public official charged with the duty of assessing property for taxation, in fixing the value of an estate for inheritance-tax purposes under our. law. The term "all public officials" used in the amendment of 1919, under consideration, does not in its ordinary significance include courts in the performance of a judicial function, and we are impressed that if the legislature had intended such a purpose more appropriate and definite language would have been employed. Furthermore, the amendment expressly provides when the returns may be produced in evidence in a judicial proceeding. The provision is that they "may be produced in evidence in any action or proceeding, civil or criminal, directly pertaining *to such returns or the assessment made thereon.*" Manifestly this means in any action or proceeding in which the correctness of such returns is an issue.

Here it was sought to introduce in evidence the income-tax returns made by the Northwestern Lumber Company in a proceeding which does not pertain to the correctness of such returns or the assessment made thereon, but in a proceeding to which the lumber company is not a party and in which it has no interest. Manifestly the general purpose of the amendment was to make the returns available to tax officials charged with the duty of assessing property referred to in such income-tax returns in order that they may properly discharge the duty of assessing the property for general taxation purposes and to make the returns admissible in evidence in "any proceeding, civil or criminal, directly pertaining *to such returns or the assessment made thereon.*" Upon no theory should the income-tax returns made by the lumber company have been admitted in evidence. The certified copy of the returns offered in evidence on the part of the state was properly excluded.

Upon the record made there was no evidence upon which the court could value the stock at more than $300 per share. Under ordinary circumstances this would result in

an affirmance of the judgment.  However, we think it is very doubtful that justice has been done.  There is evidence in the record which suggests that the actual value of the physical assets of the corporation is greatly in excess of $300 per share.  The evidence shows that there are 2,523 shares of stock outstanding valued at $300 per share.  This aggregates $756,900.  Among the assets is the Stanley, Merrill & Phillips Railroad Company, inventoried or carried on the books at $600,000.  There are between 60,000 and 70,000 acres of cut-over lands, some of which has been sold at from twenty to thirty dollars per acre, although it appears that a considerable portion thereof is less valuable. It had stock in the O. & N. Lumber Company of something like $250,000 par value, as well as stock in a number of other corporations.  The president testified that the book value of the stock was over $1,000 per share.

In a case like this, where the public is interested and where it must act through public officials, its right should not be concluded by their ill-advised action.  This case was tried on the theory that the certified copy of the income-tax report was admissible in evidence and was potent to show the actual value of the assets of the company at a far greater sum than the amount at which they were inventoried.  No effort was made to show the actual value of the assets of the company except to call the officers of the company, some of whom claimed to have no knowledge whatever, while others claimed that they were unable to testify offhand on the subject.  Upon another trial the actual value of these assets can be shown by competent testimony, and we are constrained to exercise the discretion vested in this court by sec. 2405$m$, Stats., reverse the judgment, and remand the case for a new trial.  We think, however, that under the circumstances no costs should be taxed in favor of the prevailing party.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.  No costs to be taxed.