In the Matter of the Estate of CATHARINE L. WOLFE, Deceased.

Appeals of the RECTOR, ETC., OF GRACE CHURCH and THE METROPOLITAN MUSEUM OF ART.

|137  205|
|137  407|

Under the provisions of the Collateral Inheritance Act (§§ 13, 15, chap. 483, Laws of 1885), in reference to fixing the value of property for the purpose of assessment and taxation, the surrogate is made the assessing and taxing officer, and as such is the representative of the state.

In order to give the surrogate of the county of New York jurisdiction, it is not essential that the proceedings should be initiated by the district attorney at the instance of the treasurer or comptroller for the enforcement and collection of the tax as authorized by said act (§§ 16, 17), nor is it necessary that the treasurer or comptroller should have notice; but whenever the machinery of this system of taxation is set in motion under the provisions first mentioned, whether upon "application of any interested party or upon his own motion," the surrogate is at once invested with the office and functions of an assessor for the state, with authority to determine the question whether the property of the decedent was subject or liable to taxation under the act, and his determination thereon is final and conclusive in any subsequent proceedings.

Where, therefore, in proceedings instituted by the district attorney under said act, it appeared that upon application of the executors of the will of decedent, appraisers were appointed by the surrogate, and upon the coming in and confirmation of their report, the surrogate made a decree adjudging that certain legacies were exempt from taxation under the act, *held*, that as to said legacies the former adjudication was a bar.

(Argued January 30, 1893; decided February 10, 1893.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made December 29, 1892, which affirmed a decree of the surrogate of the county

of New York, imposing a collateral inheritance tax upon a legacy to Grace Church in the city of New York and upon a legacy to the Metropolitan Museum of Art in the city of New York, given in the will of Catharine L. Wolfe, deceased.

The facts, so far as material, are stated in the opinion.

*S. P. Nash* for appellant. The amendment in 1892 of the Collateral Inheritance Act was in terms retroactive, and should have led to a dismissal of the proceeding. (Laws of 1892, chap. 169; *Reid* v. *Bd. Suprs.*, 128 N. Y. 364.) Religious corporations should be exempted, and the courts should not resort to subtle argumentation to frustrate that intent. The tax imposed is a special, not a general one, and is to be construed strictly against the government and favorably to the taxpayer. (*In re Vassar*, 127 N. Y. 1.) The decretal order made in the Surrogate's Court on the 29th day of October, 1887, under which the executors paid, and Grace Church received, the legacy given in and by the will of Miss Wolfe, was an adjudication, final and conclusive, in opposition to the prayer of the petition in this case. (*Bogardus* v. *Clark*, 4 Paige, 623; *Gelston* v. *Hoyt*, 13 Johns. 561; *In re Mayor*, etc., 99 N. Y. 569; *In re E. C. Bank*, 18 id. 199.) The decision of the General Term that the surrogate had no "jurisdiction to determine in the proceeding mentioned the question of exemption," was erroneous. (*In re McPherson*, 104 N. Y. 306.) The idea suggested below, that the surrogate has jurisdiction to determine questions arising under the act only on a proceeding by the district attorney, under section 17, is erroneous. (*In re McPherson*, 104 N. Y. 306; *In re Miller*, 110 id. 216; *In re Vassar*, 127 id. 1; *In re Stewart*, 131 id. 274; *In re Cager*, 111 id. 343.) No officer or board authorized by law to tax the property of the citizen can, after having exercised their functions, tax it over again, upon the ground that they had made errors, either in the valuation or in deciding as to exemptions of any property. (Laws of 1865, chap. 453.) But if the first proceeding was void, then a reassessment was necessary, and the act of 1890 (Chap. 583) had

come into operation, which exempted religious corporations from liability to the tax. More than two years had elapsed since the money was paid over to the appellants, and the Statute of Limitations, therefore, protects them. (Code Civ. Pro. § 384.)

*Joseph H. Choate* and *William V. Rowe* for appellant. The jurisdiction of the surrogate to make this former adjudication is clear. As an assessor, it was his duty to make that determination. (*N. Bank* v. *City of Elmira*, 53 N. Y. 49; Laws of 1885, chap. 483, § 13; *In re N. Y. C. Protectory*, 77 N. Y. 342; *Mygatt* v. *Washburn*, 15 id. 316; *McLean* v. *Jephson*, 123 id. 142.) In assessing and fixing this tax, that was a determination which the surrogate, as the assessor, was bound to make at the very moment of, and as a part of, the proceedings for the assessment. The state itself, through its assessor, thus declared finally and for all time that it would not demand this tax. Such a determination is conclusive. The state itself cannot reverse that determination, made in accordance with the statute; much less can any officer of the state be permitted to do so. ˙ (Laws of 1885, chap. 483.)

*Benjamin F. Dos Passos* for respondent. Neither of the appellants, Grace Church nor the Museum of Art, is exempted from the collateral inheritance tax by any general or special statute, upon any ground whatever. (*Catlin* v. *Trinity College*, 113 N. Y. 133; *In re Vassar*, 127 id. 1; *In re Vanderbilt*, 10 id. 239; Laws of 1870, chap. 197; 113 N. Y. 138; 2 Potter on Corp. § 435; *People* v. *Cassidy*, 46 N. Y. 53; *People* v. *Bd. Suprs.*, 18 Wend. 605; 104 N. Y. 588.) The *ex parte* orders of August 27, and October 9, 1887, made in the executor's proceedings, under section 13, are not binding upon the respondent nor upon the comptroller of the city of New York, as he was not, by due and proper notice, made a party to such proceeding nor afforded any hearing therein. (Laws of 1885, chap. 483, § 13; *In re McPherson*, 104 N. Y. 322; *In re Arnett*, 49 Hun, 599–601; *In re Vanderbilt*,

10 N. Y. 239; *In re Astor,* 6 Dem. 410, 419; *Cox's Appeal,* 1 Burd. Dig. [1st ed.] 218; *Stuart* v. *Palmer,* 74 N. Y. 183; *In re Stewart,* 131 id. 282; *In re Enston,* 113 id. 184; Laws of 1892, chap. 399, § 11; *Gilman* v. *Healy,* 46 Hun, 310; Code Civ. Pro. § 453; *Voight* v. *Schenck,* 7 N. Y. 864; *Hood* v. *Hood,* 85 id. 561; *Bank* v. *Hasbrouck,* 6 id. 320.) Whether the comptroller was entitled to notice or not under section 13, the order of October 29, 1887, exempting appellants, being without jurisdiction affords no bar or defense to respondent's proceeding to enforce payment of the tax under sections 16 and 17 of the statute. (*In re Farley,* 15 N. Y. S. R. 727; *In re Arnett,* 48 Hun, 599, 601; *Stinger* v. *Com.,* 26 Penn. St. 424, 429; *Com.* v. *Friedley,* 9 Harris, 33; *Strode* v. *Com.,* 52 id. 186; *Tyson* v. *State,* 28 Md. 585; *Ashton* v. *City of Rochester,* 133 N. Y. 196.; *People* v. *Davenport,* 91 id. 585.) The orders of August 27 and October 29, 1887, do not operate upon any principle of estoppel, as former adjudications against the district attorney or state in a proceeding instituted under sections 16 and 17 of the statute. (*In re McPherson,* 104 N. Y. 323, 324; *Turnpike Co.* v. *Gould,* 6 Mass. 40–44; *U. S.* v. *Penn. Co.,* 27 Fed. Rep. 340; *U. S.* v. *Trucks,* 27 id. 541; *In re R. R. Co.,* 110 N. Y. 374, 379; *In re Hall,* 27 N. Y. S. R. 133; *In re Howard,* 54 Hun, 305; *Case* v. *Reeves,* 14 Johns. 79; *Dear* v. *Reed,* 37 Hun, 594, 598; 6 Wait's Act. & Def. 787; *In re Arnett,* 49 Hun, 399; *In re Farley,* 15 N. Y. S. R. 727; *Frazer* v. *People,* 6 Dem. 174; *Perry* v. *Dickson,* 85 N. Y. 345; *Stannard* v. *Hubbell,* 123 id. 331; *Dawley* v. *Brown,* 79 id. 390.) The liability of appellants to taxation must be determined by the act of 1885, chapter 483, in force at her death, and when the tax was imposed, as chapter 553, Laws of 1890, and chapters 169 and 399 of the Laws of 1892 are not in any sense retroactive. (*In re Miller,* 110 N. Y. 217, 255; *Sherill* v. *Christ Church,* 121 id. 701; *Ely* v. *Holton,* 15 id. 595; *In re Stewart,* 131 id. 279; *In re Kemeys,* 56 Hun, 119; *Montague* v. *State,* 54 Md. 483; *Pearson* v. *People,* 79 N. Y. 433.) As this tax is not a

forfeiture, penalty nor escheat, the two years Statute of Limitation is not a bar to this proceeding. (Code Civ. Pro. § 384; *In re Vanderbilt*, 10 N. Y. 239, 241; *Arnaud v. Holland*, 3 La. 337, 560.)

*Edgar J. Levey* and *George H. Barnes* for respondent. The surrogate acting in pursuance of the provisions of chapter 483, Laws of 1885, is a judicial and not a ministerial officer. (Laws of 1885, chap. 483, §§ 13, 15; *In re Astor*, 6 Dem. 415; *In re McPherson*, 104 N. Y. 323; *N. Bank v. City of Elmira*, 53 id. 49, 53; *Mygatt v. Washburn*, 15 id. 316, 321.) County treasurers and the comptroller of New York city are persons entitled to notice of the proceedings had under section 13, chapter 483, Laws of 1885. (Laws of 1885, chap. 483, §§ 1, 2, 8, 9, 10, 11, 13, 16, 17, 18, 19, 21, 22, 23.) Under section 13, chapter 483, Laws of 1885, the surrogate has power to determine the liability of estates to the collateral inheritance tax. (Laws of 1892, chap. 399, § 11; *In re McPherson*, 104 N. Y. 323; *In re Astor*, 6 Dem. 402; Laws of 1887, chap. 713, §§ 4, 17; *In re Miller*, 6 Dem. 121; 110 N. Y. 216.)

GRAY, J. Catharine L. Wolfe died in the month of April, 1887, leaving a last will, by which, among other dispositions of her estate, she bequeathed a legacy of $350,000 to the rector, etc., of Grace church, in New York city, in trust for the benefit of that church, and another legacy to the Metropolitan Museum of Art, in said city, of her collection of paintings, of the appraised value of $148,025, and of the sum of $200,000 in money for the preservation and increase of that collection. In June, 1887, her executors applied to the surrogate of New York county for the appointment of an appraiser, under the provisions of chapter 483 of the Laws of 1885, known as the Collateral Inheritance Tax Act, in order to ascertain the amount of the tax upon her various legacies. Such an appointment was made, and, upon the coming in of his report appraising the value of the decedent's property, the surrogate made an order confirming the report and assessing the tax upon

various legacies; but he reserved the question of the liability to taxation of property of the estate disposed of in certain clauses, which included these bequests, for further consideration and fixed a future day for hearing thereupon. Copies of the appraiser's report and of the surrogate's order were thereafter served upon the comptroller of the city. Upon the return day, fixed by the order for the hearing upon the question reserved, neither the comptroller nor the district attorney appeared, and thereafter and on October the 29th, 1887, the surrogate made a decree reciting the proceedings had, etc., and adjudging, among other things, that the legacies in question here were exempt from taxation under the act. On May the 31st, 1888, the executors, relying upon said decree, paid over the legacies in full to the respective legatees. On October the 15th, 1890, and possibly, if not probably, moved thereto by our decisions in *Catlin's* case (113 N. Y. 134) and in *Sherrill's* case (121 N. Y. 701), the district attorney of New York, by direction of the comptroller, filed his petition and instituted the present proceeding for the assessment and collection of a tax under the act. The legatees and appellants here pleaded the previous decision and decree of the surrogate as an adjudication of the matter and their payment of the legacies under the decree, which had remained unappealed from and was in full force, and, further, set up the non-liability of the legacies to taxation. The surrogate held the proceedings valid and decided that a tax was due and should be paid. His decision was affirmed at the General Term; where it was held that the legacies were not exempt and, with respect to the prior adjudication, the present decree was upheld on the ground that in the prior proceeding the surrogate had no authority to determine the question that a party is not liable to taxation; except in a proceeding initiated by the district attorney. The theory of the determination, upon the latter point, in the Surrogate's Court had been that, under the act, the comptroller of the city was a necessary party to the proceedings, and, for the lack of notice to him, upon the previous proceeding, the comptroller was not bound by the decision then made. The General Term in

their opinion, however, do not agree in that construction of
the act and hold that it is entirely discretionary with the sur-
rogate as to what notice shall be given and to whom.   In sus-
taining the decree, they proceed, as to this point, upon the
proposition that, until such a proceeding is instituted as is pro-
vided for under Sections 16 and 17, the act has not provided
any way by which the issue of an exemption from taxation
can be presented.

As I read the provisions of this act, I think we must differ
with the conclusions below and that the proper construction
of this act makes of the surrogate the assessing and taxing
officer and, as such, the representative of the state for purposes
relating to the appraisement and taxation of property.   I think
it is very clear that the legislature has provided, as the Gen-
eral Term opinion in fact concedes, that the surrogate might
proceed with the assessment of the tax without notice to any
state official.   The difficulty encountered by the learned justices
below is in their failure to give full effect to the provisions of
§ 13 of the act.   Section 13, so far as it is material, reads
as follows, viz. : " In order to fix the value of property of per-
sons, whose estate shall be subject to the payment of said tax,
the surrogate   *   *   *   shall appoint some competent person
as appraiser, whose duty it shall be forthwith to give notice to
all persons known to have, or to claim, an interest in such prop-
erty and to such persons as the surrogate may by order direct,
etc., to appraise the same at its fair market value and make a
report thereof in writing to said surrogate   *   *   *   *and from
this report the said surrogate shall forthwith assess and fix the
then cash value of all estates   *   *   *   and the tax to which the
same is liable, etc.*"   By section 15 it is provided that " the Sur-
rogate's Court   *   *   *   shall have jurisdiction to hear and deter-
mine all questions in relation to the tax, etc."   When we read
all of the provisions of this act, it is perfectly apparent
that a special system of taxation was created for the benefit
of the state, with all the necessary machinery for its working ;
the control with respect to which was vested in the Surro-
gate's Court, with a jurisdiction exclusive in its nature.   In

the assessment of a tax upon property passing by will, or by
the intestate law, the responsibility is imposed by the law upon
the surrogate.    He acts for the state and he is commanded to
assess and fix the tax to which the property is liable.    To
comply with the command in section 13 of the act, in that
respect, he must, necessarily, determine the question of lia-
bility to taxation, inasmuch as if no such liability exists he is
without jurisdiction in the matter.    When the machinery of
this system of taxation is set in motion, under section 13 of
the act, whether upon the application of interested parties, or
upon his own motion, the surrogate, by force of its provisions,
is at once invested with the office and the functions of an
assessor for the state, whose duty it is to assess for its use a
tax ; and in whom, not only by virtue of the office, but by the
further provisions of section 15, inheres the authority, and
upon whom rests the obligation, to determine the question of
whether the property of the decedent, which passes to others,
is subject or liable to taxation by the state.    He must decide
whether the property is taxable, for that fact lies at the founda-
tion of his jurisdiction and is of the essence of his right to
proceed with the assessment.    Not all the property of deced-
ents may be subject to the tax imposed by the first section,
and what property shall be assessed for taxation is left, by the
thirteenth section, for the surrogate to determine.    To quote
again the language, he "shall assess and fix the cash values of
all the estates, etc., and the tax to which the same is liable,"
and this direction to assess involves the necessity, as well as
the power, to determine the question of liability ; as much as
it does in the case of assessors of taxes in the general scheme
of taxation.

I can see no difference between the principle upon which
the surrogate acts, in proceeding to assess property for taxa-
tion under the act, and that upon which, in the general system
of taxation in the state, tax assessors act in the assessment of
persons or property for purposes of taxation.    It is well
settled, as to them, that in their proceedings they must deter-
mine the question of liability to taxation as a fact, which gives

them jurisdiction to assess. It is not only an important but it is a conditional step in the proceeding for the assessment. That the doctrine of notice has any application in such proceedings to the case of the comptroller, is a proposition which has neither support in some requirement of the act, nor is justified by his relation to the subject-matter. He is not a person who has any interest in the property. He is an utter stranger to it. Contingently upon the refusal or neglect to pay a tax due under the act, it may become his duty to notify the district attorney to proceed to enforce collection. The performance of that duty, however, involves the idea of a failure of the surrogate to act at all, or of a neglect or refusal to obey the decree of the Surrogate's Court. It, doubtless, is very proper that the surrogate should cause the comptroller to be notified of the proceedings for appraisement and assessment, in order that a question which concerns the interests of the state may be tried out in the fullest possible manner; but nothing in the law, or in the relations of the comptroller, makes notice to him a prerequisite to a complete determination by the surrogate of the questions presented in the proceedings. The doctrine of notice is one which finds application when it is sought to tax the property of the citizen. When he is to be assessed it is essential that he shall be given an opportunity to be heard, to establish a demand against him. As matter of fact, in this proceeding, it appears that the comptroller was caused to be notified by the surrogate before he passed upon the question of the liability of these legacies to taxation; so that he had his opportunity to appear and be heard, if he had chosen to avail himself of it. I can see no more force in the argument as to an implied requirement of notice to him, than if the argument was made, in the case of the assessment and taxation of property under the general system of taxation in the state, that some state official should have notice and the opportunity to be heard. Section 17, to which the General Term opinion refers, as pointing out the sole method for obtaining a determination of the question of exemption, has relation to the enforcement and collection of the tax. Its plain reading

is that whenever the comptroller has reason to believe that any tax is due and unpaid, after the refusal or neglect of the person interested in the property liable to said tax to pay the same, he shall notify the district attorney, and that official is to prosecute the proceedings " for the enforcement and collec. tion of such tax." The section has reference only to a case where a tax is due and has not been paid. The tax may be due because the surrogate had so determined under section 13 ; or, where no proceedings have been had for appraisement, etc., the comptroller and district attorney may believe a tax to be due, and in either case the machinery may be set in motion to collect it through the provisions of sections 16 and 17. There is nothing in sections 16 and 17, as I read them, which provides for the determination of the question of a liability to taxation exclusively through their authority. Of course, in such a proceeding the question could be determined, because of the general power which is conferred upon the surrogate. Being vested with the duty and the authority to assess and fix the tax to which property is liable, under section 13, which carry the power to determine the question of liability, a prior determination of that question is conclusive upon the comptroller and district attorney, and leaves no scope for the operation of sections 16 and 17, except in the case of a refusal or a neglect to pay the tax which is due. In the present case, the surrogate's decree of October, 1887, was an adjudication upon the liability of these legacies to taxation, which was final, and was a complete bar to the maintenance of any subsequent proceeding by the district attorney to collect a tax.

The conclusion reached makes it unnecessary to consider the other question of an exemption under the act of 1892, which amended the act in question.

The order of the General Term and the decree of the surrogate should be reversed, and the application of the district attorney should be denied, with costs in all the courts to the appellants.

All concur, MAYNARD, J., in result.

Judgment accordingly.