wards, he stepped off the sidewalk onto the roadway and then into the pail of hot cement. There is a dispute as to how far the pail was from the curb; but this, as we view the case, is of little importance. The negligence charged against the defendant is that it left the pail of hot cement on the roadway and unguarded at the times it was not actually in use in cementing the cuts in the asphalt.

We are of the opinion that to charge the defendant with negligence on this ground is wholly unreasonable. Of course, if it had left a pail, full or empty, in a place where pedestrians could reasonably be expected to pass, it would probably be chargeable with negligence. But that was not this case. The pail of cement was an appliance necessary to be constantly, and at short intervals, used in the work of repairing. Of necessity it was of portable form, so that it could be moved from place to place as required. It was perfectly visible to any one, and in fact plaintiff himself had observed it a short time before he was injured. The obvious fact that the street was in process of repair was ample notice that the implements of repair were in use. If this boy or any other person had deliberately walked or ran forwards and stepped into the pail, it would have been an act of negligence against which the defendant was not bound to guard. It was no more bound because the boy, unheeding, ran backwards. The defendant, as we think, was not bound to anticipate that any person, boy or man, would step off of the sidewalk onto the roadway in the middle of the block while that roadway was in possession of a road gang making repairs. It was not such an accident as a reasonable man ought to have anticipated under the circumstances. Therefore it was not negligence to fail to guard against it. In our opinion the finding that the defendant was guilty of negligence was against the evidence.

It follows that the determination of the Appellate Term and the judgment and order of the City Court must be reversed, and a new trial granted, with costs to the appellant in all courts to abide the event.

INGRAHAM, P. J., and CLARKE and HOTCHKISS, JJ., concur. DOWLING, J., dissents.

---

### In re VICTOR.

(Supreme Court, Appellate Division, First Department. December 26, 1913.)

TAXATION (§ 900*)—TRANSFER TAXES—APPEALS.

    Under Tax Law (Consol. Laws 1909, c. 60) §§ 231, 232, providing that upon the report of the appraiser the surrogate shall determine the cash value of the property and that any person dissatisfied may appeal therefrom to the surrogate within 60 days, the surrogate in determining the cash value of the property transferred is merely a taxing officer, and no appeal from his determination will lie to the Appellate Division, but the appeal must be taken to the Surrogate Court.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1722, 1723; Dec. Dig. § 900.*]

In the matter of the transfer tax upon the estate of George Frederick Victor, deceased. Appeal by the comptroller from an order of

the surrogate fixing the cash value of the property transferred and the amount of the tax. On motion to dismiss. Appeal dismissed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOW-LING, and HOTCHKISS, JJ.

David Leventritt, of New York City, for the motion.

George Thoms, of New York City, opposed.

PER CURIAM. It appears that on December 2, 1912, the report of the appraiser fixing the amount upon which the tax was to be imposed was filed, and the usual order confirming the report was filed on January 6, 1913. Both the comptroller and the executors appealed to the surrogate, both appeals were heard, and by an order entered May 17, 1913, the appeal of the comptroller was overruled, and the appeal of the executors sustained in part, and the matter was remitted to the appraiser for correction and further action. The appraiser made a supplemental amended report, and the surrogate made the usual order of course fixing the cash value of the property transferred and the amount of the tax. No appeal was taken from this order to the surrogate, and apparently the time in which to appeal was allowed to expire; whereupon the comptroller appeals from this last order entered on July 11, 1913, and the respondents move to dismiss the appeal.

Section 231 of the Tax Law (Consol. Laws 1909, c. 60) provides that, upon the report of the appraiser and other proof, the surrogate shall determine the cash value of the property and give notice to the executors and persons interested. Section 232 of the Tax Law provides that any person dissatisfied with the appraisal or assessment may appeal therefrom to the surrogate within 60 days, upon filing in the office of the surrogate a written notice of appeal. This seems to be the only provision in the Tax Law which allows an appeal. The order was entered of course, without notice. It was held in the Matter of the Estate of Catharine L. Wolfe, Deceased, 137 N. Y. 205, 33 N. E. 156, that the surrogate was simply a taxing officer; and in the Matter of Costello, 189 N. Y. 288, 82 N. E. 139, that the proper proceeding to review the surrogate's decision as taxing officer was to appeal to the surrogate, and no appeal from the order of the surrogate as a taxing officer was allowable except as provided for by the Tax Law. And in that case an order of the Appellate Division dismissing the comptroller's appeal from the decision of the surrogate acting as a taxing officer was affirmed. No appeal therefore lies from the surrogate's order as a taxing officer, and this appeal must be dismissed.

Motion granted, with $10 costs.