(No. 21978.—

The People of the State of Illinois, Appellant, *vs.*
Edna D. Jennings, Appellee.

*Opinion filed October 21, 1933.*

Otto Kerner, Attorney General, R. L. Northcutt,
and Royce A. Kidder, for appellant.

G. G. Ginnaven, for appellee.

Mr. Chief Justice Orr delivered the opinion of the
court:

On February 16, 1933, the county court of Sangamon
county entered an order that no inheritance tax should be
assessed in the estate of Georgia Sturdevant, deceased, and
this appeal followed.

Georgia Sturdevant died testate May 8, 1930, a resi-
dent of Sangamon county. By her will she gave all her
property, after payment of debts, to Edna D. Jennings,
the appellee. The will was probated and admitted to rec-
ord June 9, 1930, and appellee, who was nominated in the
will as executrix, duly qualified as such. On February 7,
1932, she, as executrix, filed her sworn petition with the

county clerk of Sangamon county, addressed to Oramel B. Irwin as county judge, asking for an assessment and fixing of the inheritance tax due the State. In the sworn schedules attached to the petition she stated that she was "no relative" of the deceased, that the fair market value of her interest in the property of the deceased was $2799.22, that the "amount of exemption claimed" was $100, the "net taxable value" was $2699.22, and that the "tax claimed due" was $269.92. A hearing was had before the county judge, who on October 7, 1932, entered an order assessing an inheritance tax against appellee, as sole beneficiary, in the sum of $269.92, in accordance with her petition. On and prior to that hearing appellee was represented by an attorney. On February 9, 1933, she filed her motion in the county court of Sangamon county to vacate and set aside the order of October 7, 1932, assessing the tax. On February 10, 1933, the Attorney General, under a special appearance, filed a plea asserting that the county court had no jurisdiction in the matter because the tax had been assessed by the county judge, as an administrative officer, on October 7, 1932, no appeal had been prayed therefrom within sixty days, and therefore the order assessing the tax had become *res adjudicata*. On the same day appellee, pursuant to leave of court, filed an amended petition to set aside the order of October 7, 1932, assessing the tax, and in support thereof asserted that the "deceased agreed to will her property to your petitioner in payment of services rendered by your petitioner to the deceased; that after the payment of all just claims in said estate your petitioner received under the will property valued at $2799.22, but your petitioner alleges that said amount of property was not a gift but was payment for work and labor performed by this petitioner for the benefit of the deceased and that said amount is free from taxation." Appellee prayed that the court enter an order assessing no tax against the estate. The Attorney General filed a demurrer to the amended peti-

tion, which was overruled, and he thereupon filed an answer. After a hearing and the introduction of evidence the county court entered the order appealed from, "that no tax shall be assessed in said estate."

Appellee at no time filed a claim against the estate, as a creditor or otherwise. The evidence introduced in support of her amended petition as to the services rendered by her on behalf of the deceased is not convincing. Neither the extent nor the value of the services is disclosed. There is no evidence that the deceased was in any way obligated to pay appellee anything or that she thought she was so obligated, nor is there any evidence that appellee at any time prior to February 9, 1933, made any such claim. The record is devoid of any evidence as to whether the deceased paid appellee for such services as she rendered. At most the evidence indicates that the deceased intended to leave her property to appellee because the latter "had been good to her."

Appellant contends, among other things, that the county court was without jurisdiction to entertain the proceeding or to enter the order in question, and that in any event the order should be reversed because a transfer of property by will in payment of debts or for services rendered is subject to an inheritance tax. It is necessary only to consider the first of these contentions.

Section 11 ·of the Inheritance Tax act requires the county judge to ascertain whether any transfer of property is subject to an inheritance tax, and if so, to fix the tax. The same section provides that any person dissatisfied with the appraisement or assessment of the county judge may appeal therefrom to the county court within sixty days from the date of the assessment order on paying or giving to the county judge security sufficient to pay all costs, together with whatever taxes shall be fixed by the court. No such appeal was taken from the order of the county judge in this case, nor was there any showing

made, either in the amended petition or in the evidence, to excuse the failure of appellee to present to the county judge the claim made for the first time in the amended petition in the county court.

Under the former New York Inheritance Tax act, (Cahill's Consol. Laws of New York, 1930, chap. 61, general sec. 228,) after which section 11 of the Illinois act was apparently patterned, the surrogate was given the power to determine and assess the tax, and a like period of sixty days was given for an appeal from his decision. The decisions under the New York act held that in the absence of such an appeal the decision of the surrogate was final and conclusive. (*Matter of Wolfe,* 137 N. Y. 205; *Matter of De La War,* 204 N. Y. Supp. 336; *In re Muir's Estate,* 248 id. 143.) To the same effect is *In re Budell,* 100 N. J. Eq. 273.

On behalf of appellee it is urged, however, that section 14 of our Inheritance Tax act conferred jurisdiction upon the county court to entertain this proceeding. Section 14 is as follows: "The county court in the county in which the property is situated of the decedent, who was not a resident of the State or in the county of which the deceased was a resident at the time of his death, shall have jurisdiction to hear and determine all questions in relation to the tax arising under the provisions of this act, and the county court first acquiring jurisdiction hereunder shall retain the same to the exclusion of every other." This section must be construed in the light of section 11 in order to ascertain the legislative purpose. It is at once apparent that the two do not in anywise conflict. Section 11 provides a summary procedure for assessment of the tax by the county judge and also for a review of his decision by the county court. It cannot be assumed that the legislature intended that the county court should, except by way of the appeal provided by section 11, entertain a proceeding *de novo* in any case where the tax had

been assessed by the county judge. Where the county judge has assessed the tax and an appeal from his decision has been perfected to the county court and affirmed, it seems too clear for argument that section 14 was not intended to authorize the county court to again consider the same question in a subsequent and new proceeding. And the same result would seem necessarily to follow in a case where no appeal has been taken to the county court from the order of the county judge assessing the tax. The evident purpose of section 14 was to confer upon the county court jurisdiction (*a*) to entertain appeals from the orders of the county judge pursuant to the provisions of section 11; (*b*) to entertain proceedings and decide all questions with respect to inheritance taxes in cases which had not been passed on by the county judge; and (*c*) to hear and determine all questions not committed to the county judge by section 11.

In *Talbot* v. *People,* 339 Ill. 333, we held that the county court had jurisdiction, under the provisions of section 14 of the act, to re-assess the tax in an estate where the original assessment had been made, under section 25, at the highest rate and the contingencies requiring such assessment had subsequently been resolved, with the result that it appeared the tax should have been assessed at a lower rate. But in that case a refund was due under the provisions of section 25 by reason of the subsequent vesting of the estate, and the holding was that the county court, under section 14, had jurisdiction to hear and determine that question. Other provisions of the act (secs. 8 and 10) likewise authorize the county court to grant a refund of taxes in certain cases of over-payment. But the refund provisions of the act have no application except in cases where the tax has been paid. Here the tax has not been paid, and for this reason the county court could have had no jurisdiction to grant a refund under the provisions of the act had it attempted to do so.

For the reasons above given it is our opinion that where the county judge has assessed the tax and no appeal is taken from his order, as provided by section 11, his decision is final and conclusive and not subject to review by the county court, except, as above indicated, in case of an application for refund, with respect to taxes paid, under the provisions of sections 8, 10 and 25.

The order appealed from is therefore reversed and the cause is remanded to the county court of Sangamon county, with instructions to set aside and vacate the order of February 16, 1933, thus leaving in force and effect the prior order of the county judge of October 7, 1932, wherein appellee was assessed the sum of $269.92 inheritance tax.

*Reversed and remanded, with directions.*