*In re* ESTATE OF ZULENA M. BARKER, Deceased—(THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* ERNESTINE G. BARKER, Ex'r, Defendant-Appellee.)

(No. 12140; ▬▬▬▬▬)

Fourth District—December 30, 1974.

*Rehearing denied January 30, 1975.*

SMITH, P. J., specially concurring.

William J. Scott, Attorney General, of Springfield, and Joseph O. Rubinelli, of Rubinelli & Rubinelli, of Chicago (Warren K. Smoot and Thomas J. Downs, Assistant Attorneys General, of counsel), for appellant.

Gardner, Carton, Douglas, Chilgren & Waud, of Chicago, and Markowitz, Lawrence, Lenz, Jennings & Naylor, of Bloomington (Joseph P. Carr, James J. McClure, Jr., and Elliot M. Schnitzer, of counsel), for appellee.

Mr. JUSTICE CLARK delivered the opinion of the court:

This case has been transferred here from the supreme court under Supreme Court Rule 365. (Ill. Rev. Stat. 1973, ch. 110A, par. 365). The Attorney General attempted to consolidate this appeal with an appeal taken by a taxpayer from a Third District decision of *In re Estate of Voss*, 5 Ill.App.3d 320, 282 N.E.2d 178. The issue in both cases dealt with the propriety of the circuit court's ruling assessing the date-of-death value of United States Treasury bonds for Illinois inheritance tax purposes. The circuit court of McLean County found that the "clear market value" of the United States Treasury bonds at the time of decedent's death under the Illinois Inheritance Tax Act (Ill. Rev. Stat. 1969, ch. 120, par. 375) was the fair market value of said bonds and not the par value. The court's decision was made notwithstanding the fact that the bonds were redeemable at par when used for the payment of decedent's Federal estate taxes. The Attorney General contests the court's ruling.

Aside from the aforesaid valuation issue, the Attorney General, in his reply brief on appeal, raised a second issue. The Attorney General contended that if the treasury bonds can be valued at their fair market values as of the date of decedent's death, then the amount of Federal

estate taxes paid and thus allowed as a deduction against the decedent's gross estate for Illinois inheritance tax purposes should be reduced by the difference between the par value of the bonds and the fair market value. The executrix was permitted to file a supplemental brief wherein she urged that the Attorney General had waived the deduction issue.

During the course of oral argument of this case, we propounded to the parties certain constitutional and jurisdictional questions concerning the procedures as specified in section 11 of the Illinois Inheritance Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 385).

The underlying facts of this cause of action are as follows. On January 23, 1970, Zulena M. Barker died testate. Her will was probated in the circuit court of McLean County. Among the assets of decedent's estate were several United States Treasury bonds. These bonds had a par value of $30,000. Each bond returned 3¼ percent interest per annum, and the bonds began maturing annually from 1978 to 1983. The fair market value of the bonds at the date of decedent's death was set at $65.44 per $100. This value was the market-quoted value.

The executrix of the estate determined that such a valuation complied with the requirements of the Illinois Inheritance Tax Act that all property of a decedent be valued at the property's fair market value. The total fair market value of the bonds included in decedent's gross estate amounted to $19,632. The Attorney General filed objections to decedent's Illinois inheritance tax return. The Attorney General contended that all United States Treasury bonds used as part payment of Federal estate taxes, and thus redeemed at par for that purpose, should be valued at par in the Illinois inheritance tax return.

A hearing was held on the Attorney General's objections. On July 9, 1971, the judge ruled in favor of the executrix. In a memorandum of opinion the reasoning of the executrix was essentially adopted. The Attorney General filed a petition for appeal to the circuit court on August 2, 1971. In the appeal, the Attorney General sought to have the aforementioned order overruled. On August 6, 1971, the appeal to the circuit court was allowed. On March 13, 1972, the July 9, 1971, order assessing taxes was affirmed.

The Attorney General then filed a notice of appeal to the Supreme Court of Illinois, which transferred the case to this court.

■■ As to the Attorney General's first contention, dealing with the correct valuation of the bonds in question, we find that the decision of the supreme court in *In re Estate of Voss*, 55 Ill.2d 313, 303 N.E.2d 9, is dispositive. In *Voss*, the supreme court addressed the same issue that is presented to us and rejected the Attorney General's position on that issue. Therein the court stated that, under section 11 of the Illinois

Inheritance Tax Act, Illinois inheritance tax is imposed upon the *clear market value* of decedent's property as set on the date of death. The court discussed the concept of market value as found in the statute and held that the United States Treasury bonds must be valued at their market-quoted value rather than at par or face value. The court observed the fact that bonds are redeemable at par value for payment of Federal estate taxes is a factor considered in establishing the clear market value of bonds.

The Attorney General next urges that if the bonds are valued at market value for Illinois inheritance tax purposes then the deduction allowed under Schedule D for the Federal estate taxes paid should be reduced by the difference between the market and par values of the United States Treasury bonds. The executrix contends that this court may not consider the Attorney General's second issue. It is urged that this issue was not raised below along with the deduction issue and therefore has been waived. We agree.

Theories not raised in the trial court are deemed waived on appeal. (*Cockerill v. Wilson*, 51 Ill.2d 179, 281 N.E.2d 648.) Likewise, a party cannot change or alter the theory of its case on appeal. (*O'Hare International Bank v. Feddeler*, 16 Ill.App.3d 35, 305 N.E.2d 325.) This is precisely what the Attorney General has done. We have searched the record and examined the Attorney General's objections to the tax return in question and find that the questions in the circuit court were limited to the valuation issue.

As indicated, this court raised certain questions during the course of oral arguments. These inquiries dealt with various constitutional and jurisdictional matters relating to the procedures found in section 11 of the Illinois Inheritance Tax Act, which provides procedure for the operation of the circuit court and the method of appeal therefrom.

On July 9, 1971, the circuit court dismissed the Attorney General's tax objection. Within 30 days the Attorney General petitioned for appeal to the circuit court. This petition was granted, a hearing was held thereon, and the circuit court took the matter under advisement. The circuit court announced its decision on March 13, 1972, and stated:

> "This matter came on to be heard upon the Appeal of the People of this State of Illinois from an Order Assessing Inheritance Tax entered July 9, 1971. The Court heard the arguments of counsel and on due and careful consideration therefore FINDS said appeal should be denied and dismissed.
>
> It is ORDERED that Appeal of the People of the State of Illinois from the Order Assessing Inheritance Tax be denied and dismissed."

The Attorney General filed a notice of appeal which stated:

" PLEASE TAKE NOTICE that PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, by WILLIAM J. SCOTT, Attorney General of the State of Illinois, their attorney, hereby appeal to the Supreme Court of Illinois from the order assessing tax herein, entered on March 13, 1972, by Honorable Wendell E. Oliver, Judge of the Circuit Court of the Eleventh Judicial Circuit, McLean County, Illinois."

Except for the Attorney General's notice of appeal, all of the above proceedings were governed by section 11 of the Illinois Inheritance Tax Act. Section 11 states:

"Any person or persons including the Attorney General, dissatisfied with the appraisement or assessment, or the allowance of fees and expenses to the appraiser, or other costs taxed; may appeal therefrom to the circuit court of the proper county within 60 days after the making and filing of such assessment order on paying or giving to the circuit judge who made the order of assessment security satisfactory to pay all costs, together with whatever taxes shall be fixed by the court; provided no bond or security shall be required of the Attorney General." (Ill. Rev. Stat. 1973, ch. 120, par. 385.)

We find the procedures enunciated in section 11 to be constitutionally infirm.

In *People v. Jennings*, 353 Ill. 432, 187 N.E. 429, the supreme court held that when under section 11 an inheritance tax is assessed by a county judge, the judge was acting as an administrative officer. The *Jennings* case also holds that if no appeal is taken within 60 days after the entry of an order fixing taxes, the order becomes res judicata. The import of this is that when an assessment is made, it is a final appealable order. The holding in the *Jennings* case in effect amplifies the issues herein. When the court in *Jennings* issued its mandate, it was governed by the old judicial article of the 1870 Constitution; thus, judicial officers could constitutionally function in an administrative manner under certain circumstances, and an appeal from the county court to the circuit court was a permissible and constitutional procedure. The questions herein are: (1) under the judicial article and the separation of powers of the 1970 Constitution, can a judicial officer legitimately function as an administrative official, and thus make tax assessments; and (2) if an order of a judge making an assessment is final and appealable, then can section 11 establish an appellate procedure different from that found in the Supreme Court Rules. Our answer must be "no" as to both questions. ■■ In article II, section 1, of the 1970 Constitution, it is stated:

"The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const., art. II, § 1 (1970).)

In article VI, section 1, of the 1970 Constitution, it is stated:

"The judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts." (Ill. Const., art. VI, § 1 (1970).)

These constitutional provisions mandate that the judiciary shall function separate and apart from other branches of government and exercise only judicial power. This in and of itself precludes a constitutional court, such as the circuit court, from functioning in an administrative capacity. The only exception to this rule is that the various courts may see to the administering of needs of the judicial system as set forth in article VI of the constitution.

Section 11 runs counter to the basic concepts set out in the constitution. In *Jennings*, it is clear that a judicial officer who makes assessments under said section acts in an administrative capacity.

■■ The judicial article of the 1970 Constitution and the 1962 amendment to the 1870 Constitution prohibit the appeal of an order from a judge of the circuit court to the circuit court. Professor Rubin Cohn in his article *The Illinois Judicial Department—Changes Affected by Constitution of 1970*, 1971 U. Ill. L.F. 355 (1971), noted that the judicial article established an integrated three-tier court system composed of the circuit courts, appellate court and supreme court. At the base of the new judicial system was the unified circuit court having general jurisdiction. It is there further pointed out that the amendment abolished all prior constitutional statutory courts of limited jurisdiction, *i.e.*, county, probate, municipal, city, village and town courts, superior court of Cook County, justices-of-the peace and magistrate courts. Also, Professor Cohn's article observes that the jurisdictional problems that plagued the pre-existing system of fragmented trial courts were eliminated by the integrated circuit court concept as were the costly and unnecessary retrials *de novo* occasioned by the system. U. Ill. L.F. at 355-356.

■■■ Article VI, section 6, of the 1970 Constitution states that appeals from final judgments of the circuit court are appealable to the appellate court as a matter of right. Section 11 would have an interested party appeal from the order assessing taxes, a final order under *Jennings*, to a court other than the appellate court. The section also permits an appeal to be taken in 60 days rather than the 30 days as prescribed in the Supreme Court Rules. (Ill. Rev. Stat. 1973, ch. 110A, par. 303.) The conflict between section 11 and the Supreme Court Rules is apparent. It is a general rule that only the supreme court has authority to make rules governing time schedules or appeals. (*People v. Kennedy*, 43 Ill.2d 200,

251 N.E.2d 209.) It is also the rule that the supreme court and not the legislature has the rule-making responsibility for appeals under the constitution. (See *People ex rel. Stamos v. Jones,* 40 Ill.2d 62, 237 N.E.2d 495; Ill. Const. (1970), art. VI, § 16.) The appeal procedures of section 11 in all respects are in direct conflict with the Supreme Court Rules, and therefore are unconstitutional.

All relevant proceedings with which we are here concerned occurred subsequent to the effective date of the new 1970 Constitution. The purported appeal to the circuit court was a nullity, and this purported appeal from the ruling on that appeal is dismissed for want of jurisdiction. Thus, the original order of July 9, 1971, is now final. That order is in agreement with the decision in *Voss.*

Appeal dismissed.

CRAVEN, J., concurs.

Mr. PRESIDING JUSTICE SMITH specially concurring:

I concur in the ultimate result in this case which leaves the original order of July 9, 1971, assessing inheritance tax in this estate as a final order. My disenchantment is the method by which that result was reached. It seems to me that *In re Estate of Voss,* 55 Ill.2d 313, 303 N.E.2d 9, disposes of the only issue before this court, but that the rest of the opinion is wholly unnecessary and discusses issues not properly raised. In particular, I see no occasion either to discuss or to decide the constitutionality of any part of the Inheritance Tax Act. We raised some questions about it in oral argument. It was never decided by the trial court, and, as a consequence, in discussing that question here, the majority opinion goes far afield from any issue that we properly review. It is not necessary to find any part of the Inheritance Tax Act unconstitutional to dispose of this appeal.

We appropriately dismiss the attempted appeal not because of any provision of the State inheritance tax law but because of previous opinions of the Illinois Supreme Court that it is the obligation of that court to provide for expeditious and timely appeals and that it has the power rather than the legislature for making rules for appeals. (*People v. Kennedy,* 43 Ill.2d 200, 251 N.E.2d 209; *People ex rel. Stamos v. Jones,* 40 Ill.2d 62, 237 N.E.2d 495; Ill. Const., art. VI, § 16 (1970.) Following these principles, we may correctly hold that the order assessing inheritance tax was appealable to a reviewing court and not to the circuit court, and was not filed within the time limited by Supreme Court Rules. Under such circumstances, the proper order of the trial court would be affirmed without the necessity of discussing questions not decided by

the trial court and without becoming advocates in an adversary proceeding—a position which we have so frequently declared to be abhorrent.

Reliance by the majority on *Jennings* for holding section 11 of the Inheritance Tax Act unconstitutional under the 1970 Constitution is reliance misplaced and prostitutes the holding in that case. The *Jennings* court neither held nor did it state that the county judge in determining the inheritance tax due, if any, acts as an administrative officer. *Jennings* merely held that once it was determined whether or not a tax was due and the amount, if any, was fixed by the county judge, and there was no appeal to the county court, "his decision is final and conclusive and not subject to review by the county court, except" under circumstances with which we are not concerned in *Barker*. By the same token, the order of the circuit court determining tax was not appealable in the manner here attempted, and the trial court correctly denied the appeal and dismissed it. The appeal should have been taken either to this court or to the supreme court under Supreme Court Rules. It wasn't done in apt time or in the proper manner, and was from an order the trial court had no jurisdiction to review and was properly dismissed. This is so not because section 11 of the Inheritance Tax Act is unconstitutional but because the power of the supreme court to determine rules of appeal supersedes the power of the legislature to prescribe such rules. The majority manufactures a theory to use *Jennings* as a springboard to hold section 11 unconstitutional. From such a theory the conclusion necessarily follows that there was no one authorized to legally assess or impose State inheritance tax since the effective date of the 1970 Constitution. This conclusion is necessarily reached because of the majority's determination that in inheritance tax proceedings a court acts in an administrative capacity rather than in a judicial capacity. The conclusion of the majority cannot find a solid foundation in *Jennings* because nowhere did that court either say that the judge was an administrative officer nor did its decision so hold. It was only the pleadings of the Attorney General which charged the county judge with acting as an administrative officer rather than in a judicial capacity. *Jennings* held only that no appeal was prosecuted within the proper time. *Jennings* therefore in my view is no authority to support the views expressed by the majority as to the unconstitutionality of section 11 of the Act.

Indeed when the functions imposed on the probate division under our present judicial system for determining the existence or nonexistence of inheritance tax and its amount are viewed in their practical, common-sense practice, I submit that that division of the circuit court functions as a court and not as an administrative agency. To hold otherwise under the 1970 Constitution is to cast a shadow upon legal titles and create

many other legal complications too numerous to here specify. I see no reason to create any anxiety, shadows or doubts for the judiciary or the legal profession to obfuscate them when this case may be readily decided on the principles stated in *Voss* and by affirming the trial court. To denominate a circuit judge as an administrative officer under the Inheritance Tax Act is to me inexplicable, except for an unfortunate pleading in *Jennings*, unsupported by any judicial decision, and is regrettable. To make such a holding prospective only is in my judgment beyond the power of this court, in addition to being wholly unnecessary for a proper disposition of this case.